IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARK JACKSON,
                Plaintiff,

v.

ROHM & HAAS COMPANY, et al.,
                Defendants.

Civil Action No. 05-4988

**MEMORANDUM / ORDER**

Presently before this court are two motions to dismiss plaintiff Mark Jackson's corrected second amended complaint, one filed on behalf of the Rohm & Haas Co. defendants ("Rohm & Haas") (Docket No. 106)[1] and the other filed on behalf of the Liberty Life Assurance Co. defendants ("Liberty Life") (Docket No. 110).[2]  For the reasons explained below, I will grant the motions in part and deny them in part.

**I.  Facts**

The history of this litigation is long and complex, so I will set out only those facts

---

[1] The Rohm & Haas defendants consist of Rohm & Haas Co. and Deanna May, a Manager of Health & Group Benefits Operation for Rohm & Haas.

[2] The Liberty Life defendants consist of Liberty Life Assurance Co.; Nancy Mayo, a manager at Liberty Life; and Lori Hamlin, a Senior Disability Case Manager at Liberty Life. Am. Compl. ¶¶ 8–11.  There are also 25 John Doe defendants that are alleged to be agents of either Rohm & Haas or Liberty Life.  Am. Compl. ¶ 7.  I also note that the initial complaint named numerous other defendants who were not named in the second amended complaint at issue now.

relevant to this decision. As I noted in my March 9, 2006, opinion in this case:

> It all began when plaintiff Mark Jackson went on a date with a co-worker, and she subsequently accused him of sexually assaulting her. This accusation led defendant Rohm & Haas, Jackson's employer, to question Jackson about the date and to conduct an investigation into the allegation. Rohm & Haas was ultimately unable to substantiate the allegation, and it took no action against Jackson. Nevertheless, Jackson found his interrogation by Rohm & Haas personnel so abrasive that he sued Rohm & Haas in a Pennsylvania state court for invasion of privacy and intentional infliction of emotional distress. During discovery in the state-court case, a dispute arose as to the authenticity of a document containing some notes taken by a Rohm & Haas employee during investigation of the assault allegation. Jackson accused Rohm & Haas and its lawyers of falsifying evidence. The state court eventually disposed of the lawsuit in favor of Rohm & Haas on the ground that, whether or not Jackson's common law tort claims against Rohm & Haas had factual merit, those claims were preempted by the state workers' compensation statute. *See Jackson v. Rohm & Haas Co.*, 56 Pa. D. & C.4th 449 (Phila. Co. 2002). This ruling was sustained on appeal. *See Jackson v. McCrory*, 833 A.2d 1155 (Pa. Super. Ct. 2003); *Jackson v. McCrory*, 849 A.2d 1205 (Pa. 2004).
> 
> Jackson then brought a federal action against Rohm & Haas, several of its employees, and the lawyers who represented it in state court, realleging falsification of evidence during the state court proceedings and contending that this amounted to, *inter alia*, a violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq. That suit will be referred to as *Jackson I*. This court dismissed the complaint in *Jackson I* by order dated June 30, 2005. *See Jackson v. Rohm & Haas Co.*, 2005 WL 1592910 (E.D. Pa. June 30, 2005) [, *aff'd* 2007 WL 579662 (3d Cir. Feb. 26, 2007)]. I concluded that Jackson lacked standing to bring a RICO claim because his injury (loss of the state-court case) was not proximately caused by defendants' alleged fraud – that is, since the state-court ruling was based on statutory preemption rather than a finding on the merits of Jackson's privacy and infliction-of-emotional-distress claims, Jackson would have lost whether or not defendants had falsified evidence that went to the merits of the tort claims. *Id.* at 4–5. Because RICO was the only basis for federal jurisdiction, I dismissed the entire complaint, declining to exercise supplemental jurisdiction over the remaining state-law claims. *Id.* at 5. . . .
> 
> On September 19, 2005 . . . Jackson filed another lawsuit in this

court—[*Jackson II*]—claiming that the *Jackson I* defendants (Rohm & Haas, Rohm & Haas employees, and their state-court lawyers), plus the lawyers who represented the *Jackson I* defendants, plus Rohm & Haas's disability insurance administrator, Liberty Life, engaged in improper conduct in connection with *Jackson I*.

Opinion of March 9, 2006, *Jackson II*, No. 05-4988, 2006 WL 680933, at *1 (E.D. Pa. March 9, 2006). After I granted sanctions, Jackson moved this court for leave to amend his complaint (Docket No. 71). I denied this request in a Memorandum/Order of July 7, 2006 (Docket No. 90) because it contained claims that I had previously deemed frivolous in my March 8, 2006, Opinion. On November 1, 2006, plaintiff again sought leave to amend his complaint (Docket No. 96). The defendants did not object to the amended complaint, and I granted leave to amend on December 19, 2006, and the second amended complaint was deemed filed as of that date (Docket No. 100). Plaintiff had inadvertently omitted a few paragraphs from the amended complaint, so the parties stipulated to the filing of a corrected second amended complaint (Docket No. 104–05) on January 30, 2007.

In his corrected second amended complaint (hereinafter "complaint"), Jackson asserts that the defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*. (Counts I and II) and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. (Counts III–VI). Jackson further alleges supplemental state law claims of fraud (Count VII), negligent misrepresentation (Count VIII), intentional infliction of emotional distress (Count IX),

and civil conspiracy (Count X).  Defendants' motions to dismiss followed, and they are now ripe for disposition.

**II.    Analysis**

When reviewing a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002).  The court, however, "need not credit a complaint's 'bald assertions' or 'legal conclusions.'"  *Cal. Pub. Employee Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).  The motion will not be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  The issue is not whether the plaintiff will ultimately prevail but only whether he should be entitled to offer evidence to support his claim.  *See Neitzke v. Williams*, 490 U.S. 319 (1989).  However, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).

**A.    Counts I & II — RICO**

Counts I and II of Jackson's complaint allege that the defendants' conduct concerning the administration of his disability benefits violated RICO, 18 U.S.C. § 1961, *et seq*.  Count I asserts a cause of action under § 1962(c), which directs that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). Count II asserts a cause of action under § 1962(d), which directs that "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

"In order to plead a violation of RICO, plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Lum v. Bank of America*, 361 F.3d 217, 223 (3d Cir. 2004); *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). There must be at least two predicate acts of racketeering to constitute a "pattern of racketeering activity." *See* 18 U.S.C. § 1961(5).

The defendants argue that Jackson's allegations have three defects:[3] (1) they fail to allege the existence of an "enterprise" distinct from the defendants, (2) they fail properly to allege the predicate acts of mail and wire fraud, (3) they fail to allege an injury to business or property proximately caused by the defendants' alleged racketeering. I address each in turn.

### 1.  Whether Jackson has alleged a distinct RICO "enterprise"

The defendants argue that Jackson has not alleged the second element of a civil

---

[3] The defendants argue that these defects prevent Jackson from maintaining Count I. Moreover, they argue that because Count II merely adds a conspiracy allegation to Count I, it is defective for the same reasons. I agree that Counts I and II rise and fall together, so I will consider them concurrently.

5

RICO claim, the existence of an "enterprise" distinct from the defendants themselves.  In my recent Memorandum/Order in *Jackson v. Rohm & Haas Co.* (*Jackson III*), No. 2:06-cv-03682-LP (E.D. Pa. Sept. 6, 2007), Mem./Order, at 9–10,[4] I ruled that Jackson satisfied the "enterprise" requirement by alleging that Rohm & Haas and Liberty Life each acted through a joint enterprise to do him harm.  Jackson makes the same allegation in this case, and, for the same reasons, I conclude that Jackson has adequately pleaded an enterprise distinct from defendants Rohm & Haas and Liberty Life.

Defendants Lori Hamlin and Nancy Mayo, however, argue that they were merely agents of Liberty Life at all times relevant to this suit and thus are not proper defendants.  The Supreme Court has held that a person is only a proper RICO defendant if she had "some part in directing the [racketeering] enterprise's affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (emphasis omitted).  But Jackson has alleged as much.  The Third Circuit has held that, under *Reves*, "RICO liability may extend to those who do not hold a managerial position within an enterprise, but who do nonetheless knowingly further the illegal aims of the enterprise by carrying out the directives of those in control." *United States v. Parise*, 159 F.3d 790, 796 (3d Cir. 1998).  Here, Jackson has alleged that Hamlin and Mayo furthered the aims of the enterprise by misrepresenting to him his obligations under his disability benefits plan, improperly threatening him with forfeiture,

---

[4] The *Jackson III* litigation is similar insofar as it involves the same plaintiff and virtually the same defendants.  It, however, concerns events that occurred after those of which Jackson complains in this case.

and improperly suspending his benefits. *See, e.g.*, Am. Compl. ¶ 47. Because these alleged acts assertedly furthered the enterprise's alleged goals of harassing Jackson, interfering with his ability to prosecute *Jackson I*, forcing him to incur unnecessary costs, and depriving him of benefits, he has sufficiently alleged that they satisfy *Reves*'s "operation or management test." *See Reves*, 507 U.S. at 179.

    2.    **Whether Jackson has properly alleged the predicate acts of mail and wire fraud**

The fourth element of a RICO violation, "racketeering activity," is defined as "any act which is indictable under" various criminal statutes, including 18 U.S.C. §§ 1341 and 1343, which relate to mail and wire fraud, respectively. 18 U.S.C. § 1961(1). The elements of these offenses are (1) the existence of a scheme to defraud, (2) the use of the mails (or, in the case of wire fraud, the wires) in furtherance of the scheme, and (3) the defendant's culpable participation in the scheme.[5] *United States v. Dobson*, 419 F.3d 231, 236–37 (3d Cir. 2005) (elements of mail fraud); *United States v. Hedaithy*, 392 F.3d 580, 590 (3d Cir. 2004) (elements of wire fraud). Under Federal Rule of Civil Procedure 9(b), the circumstances constituting mail or wire fraud "shall be stated with particularity." Fed. R. Civ. P. 9(b); *see also Lum*, 361 F.3d at 224–25.

"The 'scheme to defraud' element of the offense of mail fraud . . . is not defined according to any technical standards. The scheme need not be fraudulent on its face, but

---

[5] Because mail and wire fraud are so similar, I will considered the allegations of each together. *See United States v. Morelli*, 169 F.3d 798, 806 n.9 (3d Cir. 1999) (noting that "the wire fraud and mail fraud statutes differ only in form, not in substance").

7

must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." *United States v. Pearlstein*, 576 F.2d 531, 535 (3d Cir. 1976) (citations omitted). Here, the defendants argue that Jackson has not specified how they attempted to deceive him or anyone else. I disagree. Jackson alleges that, under the pretense of properly evaluating his claim for disability benefits, the defendants carried out a bad-faith program of harassing him, threatening him, and suspending his benefits. *See* Am. Compl. ¶¶ 47–48. The alleged purpose of the scheme was to do Jackson harm by forcing him to incur unnecessary costs, by causing him emotional distress, and by depriving him (at least for a time) of his bargained-for disability benefits. *Id.* The defendants allegedly executed this scheme through a series of communications that purported to be part of a good-faith claims-evaluation process (thus eliciting Jackson's compliance), but were fraudulent inasmuch as the defendants had no intention of evaluating Jackson's claim fairly. *Id.* These allegations, which include references to a variety of telephone and mail communications with the defendants, explain in sufficient detail the circumstances of the alleged fraud, and they implicate the requisite level of deception.

      The defendants further argue that, even if Jackson pleaded a fraudulent scheme, he did not allege that he relied on it. Whether reliance is a necessary element of mail and wire fraud for civil RICO purposes is unclear, as there is a circuit split on the issue, and the Third Circuit has yet to take a position. *Compare Sikes v. Teleline, Inc.,* 281 F.3d

1350, 1359–60 (11th Cir.2002) (requiring reliance), *and County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1311 (2d Cir.1990) (same), *with Sys. Mgmt., Inc. v. Loiselle*, 303 F.3d 100, 103–04 (1st Cir.2002) (reliance not required).

At this stage in the litigation, the question matters little because Jackson has alleged that he relied on the defendants' alleged misrepresentations. Am. Compl. ¶ 49. Moreover, he has alleged that he completed at least some of the defendants' requests for information, *see, e.g.*, Am. Compl. ¶ 47(d), which would, so it is charged, constitute reliance on the defendants' representations. Because reliance is duly pleaded, I will, for now, reserve the question of whether it is necessary.

### 3. Whether Jackson alleges an injury to business or property proximately caused by the alleged pattern of racketeering activity

The defendants argue that Jackson has not alleged an injury to business or property, as a plaintiff must to bring a civil RICO action. Jackson has alleged three injuries: (1) interference with his ability to prosecute the *Jackson I* litigation, (2) loss of benefits during the period of suspension, and (3) costs associated with complying with the defendants' requests for information in order to reinstate his benefits. The lost benefits and costs of compliance are "concrete financial losses," which, under controlling Third Circuit precedent, are *per se* injuries to business or property. *See Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000). Thus, Jackson has properly alleged RICO injuries.[6]

---

[6] As I noted in my March 9, 2006, opinion in this case, it is doubtful that expenses related to the *Jackson I* litigation are cognizable injuries to business or property. 2006 WL 680933, at

The defendants also argue that Jackson has not specified in what way the alleged fraudulent scheme to harass, threaten, and deprive him of disability benefits constituted the proximate cause of his injuries.  I believe that he has.  In particular, Jackson has alleged that by sending him unwarranted requests for information and threats of forfeiture, the defendants succeeded in using the scheme to force him to incur a variety of unnecessary costs and to deprive him of his bargained-for disability benefits for a period of time.

\* \* \* \* \*

In sum, the defendants have not pointed the court to any fatal defects in Counts I or II.  Therefore, I will deny their motions to dismiss those counts.

### B. Counts III–VI — ERISA

#### 1. Counts III & IV — Breach of Fiduciary Duty

Jackson alleges that Rohm & Hass and Liberty Life, as administrators of his ERISA-governed disability benefits plan,[7] owed him fiduciary duties to manage the plan for his benefit.  He further alleges that both breached these duties by harassing him, threatening forfeiture, and temporarily suspending his benefits without cause.  Am.

---

\*5 n.6  (E.D. Pa. March 9, 2006).  But since Jackson has alleged other injuries that are cognizable, it is unnecessary to resolve those doubts at this time.

[7] Rohm & Haas allegedly acted as "Plan Administrator" of the disability benefits plan, and Liberty Life allegedly acted as "Claims Administrator."  Am. Compl. ¶ 38.  Both are alleged to have exercised enough discretion to be "fiduciaries" of the plan for ERISA purposes.  *Id.*; *see also* 29 U.S.C. § 1002(21)(A) (ERISA definition of "fiduciary").

Compl. ¶ 57. Unfortunately, the complaint does not specify under which provision of ERISA he is suing. The two that fit a breach of fiduciary duty claim are § 1132(a)(2) and 1132(a)(3).[8] I will consider each.

Section 1132(a)(2) allows participants in ERISA plans to sue plan fiduciaries for beaches of duty. The Supreme Court held in *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 144 (1985), that § 1132(a)(2) only allows participants to sue for breaches that cause losses to the ERISA plan itself, not for purely individual damages. Here, Jackson alleges that he was not paid benefits due him and that the defendants' misdeeds caused him to incur a variety of costs. These are, respectively, claims for benefits due and for extra-contractual damages. Neither of these is a loss to the plan itself; therefore these alleged injuries are not cognizable under § 1132(a)(2). *Id.*

Section 1132(a)(3) allows participants to pursue individual equitable relief for breaches of fiduciary duty. *Varity Corp. v. Howe*, 516 U.S. 489, 509 (1996). The defendants argue that it is unavailable here for two reasons: (1) Jackson did not exhaust his administrative remedies and (2) he has not requested equitable relief.

Under controlling Third Circuit precedent, a plaintiff must exhaust his administrative remedies only when claiming that a plan administrator improperly denied

---

[8] The other ERISA causes of action open to plan participants are for refusal to provide information, 29 U.S.C. § 1132(a)(1)(A); denial of benefits, 29 U.S.C. § 1132(a)(1)(B); failure to provide information in Internal Revenue registration statements, 29 U.S.C. § 1132(a)(4); and wrongful purchase of an insurance contract or annuity in connection with the termination of the plan, 29 U.S.C. § 1132(a)(9). Of these, the only one that seems to fit the alleged facts is a claim for denial of benefits, which I deal with in connection with Count VI, *infra*.

him benefits, not when claiming that the administrator violated substantive provisions of ERISA. *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 252 (3d Cir. 2002). But exhaustion does apply when a plaintiff "merely recast[s] [a] benefits claim in statutory terms." *Id.* Here, Jackson claims that the defendants breached their duty of loyalty by harassing him, threatening him, and suspending his benefits without cause. This is not, as the defendants argue, merely a recasting of a claim for benefits; rather, it is a claim that plan fiduciaries used their power over Jackson's disability benefits to harass him and cause him distress. Because these allegations are distinct from his claim in Count VI (see *infra*) that the defendants also denied him benefits due, the exhaustion requirement does not apply, and his claim may go forward.

The defendants also argue that Jackson's claim fails because the statute does not provide the monetary relief that he seeks. They are correct that a court is limited to granting only "those categories of relief that were typically available in equity" to remedy violations under 29 U.S.C. § 1132(a)(3). *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993) (emphasis omitted). Accordingly, they are also correct that his request for money damages is out of bounds. *Id.* at 255. But Jackson has also requested equitable relief, Am. Compl. ¶ 62, and that request may proceed.

Because Jackson has requested equitable relief and because his claim appears not to be subject to the exhaustion requirement, I will deny the defendants' motion to dismiss Count III and allow it to proceed as a 29 U.S.C. § 1132(a)(3) claim for individual

equitable relief.[9]

### 2.    Count V — Interference with Benefits

Jackson alleges that the defendants violated ERISA § 510 (29 U.S.C. § 1140) by harassing him, threatening to cut off his benefits, and suspending his benefits.  Section 510 makes it illegal for anyone to "discharge, fine, suspend, expel, discipline, or discriminate against a participant" in an employee benefit plan for exercising her rights under the plan or to prevent her from becoming eligible for a benefit.  29 U.S.C. § 1140.  Unlike other ERISA provisions that protect the employee from malfeasance in the claims administration process, § 510 reaches back "to protect the employment relationship which *gives rise* to an individual's pension rights."  *Deeming v. Am. Standard, Inc.*, 905 F.2d 1124, 1127 (7th Cir. 1990).  Accordingly, § 510 suits are limited to complaints about "actions affecting the employer-employee relationship."  *Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Pens. Plan.*, 24 F.3d 1491, 1503 (3d Cir. 1994).  Here, though Jackson has alleged conduct unbecoming an ERISA fiduciary, he has not alleged any action affecting his status as an employee.  *See* Am. Compl. ¶¶ 66–67.  Section 510 is not, therefore, an appropriate cause of action for the facts he alleges, and I will dismiss it.

### 3.    Count VI — Denial of Benefits

Jackson alleges that the defendants' temporary suspension of his disability benefits deprived  him of benefits due him under his disability benefits plan in violation of ERISA

---

[9] I will also allow Count IV to proceed, as the defendants object to it on the same grounds that I have rejected in the context of Count III.

§ 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)).  The defendants respond that his benefits were reinstated, and so he has received everything due him under the plan.  While it is true that the complaint focuses on the alleged delay in paying benefits, Jackson does reference "benefits not paid," in addition to those "not timely paid."  Am. Compl. ¶ 62.  At this stage, I must accept as true Jackson's allegation that not all benefits due him were paid.  *DeBenedictis v. Merrill Lynch & Co.*, 492 F.3d 209, 215 (3d Cir. 2007).

Liberty Life further argues that Jackson has not alleged that he exhausted his administrative remedies under the plan.  They are correct, both that the allegation does not appear in Jackson's complaint and that alleging exhaustion is generally required.  *Harrow*, 279 F.3d at 249.  Jackson alleges that his benefits were improperly suspended, but he does not allege that he complied with the appeals process outlined in the plan.  *See* Motion to Dismiss the Corrected Second Amended Civil Action Complaint, Ex. A, at 18–19 (Rohm & Haas Co. Health & Welfare Plan) (Docket No. 106).  A plaintiff may maintain suit, however, if he can show that pursuing administrative remedies would be futile.  *Harrow*, 279 F.3d at 249.

Here, though Jackson has not made an allegation of futility directly, he has alleged facts that would support such a finding.  For example, he alleges multiple communications with the defendants in which he challenged their decisions.  *See, e.g.*, Am. Compl. ¶ 47(a) & (c).  Though not styled as formal appeals, these communications may support the diligent pursuit of administrative relief.  *See Harrow*, 279 F.3d at 250.

Moreover, he alleges that his difficulty in obtaining benefits was not a product of a reasoned disagreement with the defendants over the content of the plan, but rather the product of personal animus against him.  Am. Compl. ¶ 58.  In essence, this is an allegation that, as to Jackson, the defendants maintain a "fixed policy denying benefits." *Id.*  Because Jackson has alleged facts that would excuse his failure to exhaust his administrative remedies, that failure is not fatal to his claim at this stage.

**C.    State-Law Claims**

Jackson asserts four state-law causes of action: fraud (Count VII), negligent misrepresentation (Count VIII), intentional infliction of emotional distress (Count IX), and civil conspiracy (Count X).  These counts do not contain additional substantive allegations, Am. Compl. ¶¶ 70–79, so I presume that they are based on the previously alleged scheme to harass him, threaten him, and ultimately deprive him of his disability benefits.

The defendants argue that all four of these claims are preempted by ERISA.  ERISA expressly preempts all state-law causes of action that "relate to an employee benefit plan."  29 U.S.C. § 1144(a).  Accordingly, the Supreme Court has held that causes of action based on the improper processing of benefits are preempted.  *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48 (1987).  Here, Jackson's claims not only relate to, but revolve around, the processing of his disability benefits.  The alleged misrepresentations in his fraud and negligent misrepresentation claims have to do with the defendants'

15

alleged pretense in processing his disability benefits claims.  Similarly, the heart of Jackson's intentional infliction of emotional distress cause of action is that the defendants harassed him under the guise of processing those claims.[10]

Jackson argues that his claims avoid preemption because he "do[es] not challenge the administration of, or eligibility for, ERISA benefits."  But he does.  Indeed, as explained in Part II.B, *supra*, all but one of his ERISA causes of action survive the defendants' motions to dismiss because he has duly alleged that the defendants wrongfully administered his disability benefits.  Moreover, he cannot plead around preemption by recasting disputes over ERISA benefits in other forms.  *See Aetna Health, Inc. v Davilla*, 542 U.S. 200, 214 (2004).  Because all of his allegations are bound up in the claim administration process, I will dismiss all four of his state-law claims as preempted.

### III.   Conclusion

AND NOW, this 12th day of September, 2007, for the foregoing reasons, defendants' motions to dismiss will be GRANTED in part and DENIED in part.  Plaintiff may pursue Counts I–IV and VI against all defendants.  His ERISA § 510 (Count V) and state-law claims (Counts VII–X) are DISMISSED.

In consideration of expedition and economy for the parties and the court, it is

---

[10] The conspiracy charge (Count X) rests on the predicate torts alleged in Counts VII–IX. It does not contain any additional substantive allegations, save that the defendants acted with a common purpose.  *See* Am. Compl. ¶ 79.

FURTHER ORDERED that the case is assigned to the Honorable M. Faith Angell, Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a) and Loc. R. Civ. P. 72.1 I(e) for pretrial management purposes, including but not limited to: utilization of Fed. R. Civ. P. 16 management procedures; resolution of all discovery disputes and requests for sanctions; issuance of pretrial management orders; amendments to pleadings and joinder of parties; conduct of settlement conferences as necessary; and seeking the consent of the parties for final resolution of the case by final judgment by the Magistrate Judge in accordance with 28 U.S.C. § 636(c) and Local Rule 72.1 III(b).  The parties are expected to hold the discovery planning conference required by Rule 26(f) and complete their Rule 26(a)(1) self-executing initial disclosure required by Rule 16(a)(1) promptly and in advance of the Rule 16(b) scheduling and planning conference with the court, unless the case is exempt from such disclosure by Rule 26(a)(1)(E).

BY THE COURT:

/s/ Louis H. Pollak

_____

Pollak, J.