IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK JACKSON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ROHM & HAAS COMPANY, et al. | : | NO.   05-4988 |

**O R D E R**

AND NOW, this 26th day of August, 2008, upon consideration of Plaintiff's Motion to Disqualify, and the Rohm and Haas Defendants' Response in Opposition, and after hearing oral argument on this motion, it is hereby **ORDERED**, for the reasons set forth in the accompanying memorandum, that:

Plaintiff's Motion to Disqualify HARKINS CUNNINGHAM LLP And Its Individual Attorneys [Docket Entry No. 165] is **DENIED.**

The Rohm and Haas Defendants have requested that the Court "consider taking further steps appropriate to ensure compliance with its orders and the federal rules." To the extent that the Defendants seek unspecified sanctions for the filing of Plaintiff's motion to disqualify, the request is denied.

BY THE COURT:

 S/M. FAITH ANGELL
M. FAITH ANGELL
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK JACKSON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ROHM & HAAS COMPANY, et al. | : | NO.  05-4988 |

**MEMORANDUM AND ORDER**

   Presently before this Court is Plaintiff's Motion to Disqualify HARKINS CUNNINGHAM LLP.  In this motion, Plaintiff seeks to disqualify the firm and four individual attorneys from further participation in this litigation, and requests a rule to show cause hearing as to why the Harkins firm and the individual attorneys should not be referred to the Disciplinary Board of the Supreme Court of Pennsylvania.  I have read and considered all of the allegations and arguments set forth in Plaintiff's motion to disqualify, as well as the Rohm and Haas Defendants' response in opposition, and have heard oral argument on this motion.   For the reasons explained below, I will deny Plaintiff's motion to disqualify.

**I. Background**.

   As has been noted by the Honorable Louis H. Pollak, "the history of this litigation is long and complex." *Memorandum and Order dated September 13, 2007* [Docket Entry No. 125] at p. 1.  The dispute between Mark Jackson and the Defendants has been the subject of numerous lawsuits in both state and federal court.  The parties are intimately familiar with the course of this dispute spanning more than ten years.  I will, therefore, forego any recitation of facts and will only refer to relevant facts in the context of the discussion of issues raised in Plaintiff's motion to disqualify.

In his motion to disqualify, Plaintiff argues "the Harkins firm has manifest, irreconcilable conflicts of interest which, in addition to advancing the interests of certain clients to the prejudice of others, have interfered with Plaintiff's ability to obtain the evidence necessary to prepare his case for trial, and otherwise interfered with the due administration of justice." *Plaintiff's Memorandum of Law in Support of the Motion to Disqualify* [Docket Entry No. 165-3][1] at p. 1.

The foundation for Plaintiff's disqualification motion includes the following allegations: (1) conflicts of interests between various defendants represented by the Harkins firm; (2) a persistent pattern of obstructive conduct and an intentional, persistent and longstanding failure to cooperate by the Harkins firm; (3) improper assertion of attorney-client privilege; and (4) disciplinary violations. *Id.* at pp. 5-18.[2]

## II. Legal Standards.

Federal courts have the inherent power to supervise the professional conduct of attorneys appearing before the courts, which includes the authority to disqualify an attorney. However, disqualification is a harsh measure. Because motions to disqualify seek to deprive the opposing party of their counsel of choice, and may be motivated by tactical concerns, they are generally not favored. *See Kaiser v. Stewart,* CA No. 96-6643, 1997 WL 186329, at * 2 (E.D. Pa. April 10, 1997); *Max-Um Financial Holding Corp. v. Moya Overview, Inc.*, CA No. 88-6345, 1989 WL

---

[1] Hereinafter "Plaintiff's Disqualification Memo."

[2] For the purposes of this litigation, the parties and the Court have referred to the defendants represented by the Harkins firm as the "Rohm and Haas" Defendants. For ease of reference throughout this opinion, I will continue to refer to the Rohm and Haas Defendants collectively, except where necessary to address alleged conflicts of interest between these Defendants.

8064, at *1 (E.D. Pa. February 1, 1989)("The court should not quickly deprive [litigants] of their freedom to choose the advocate who will represent their claims, nor lightly dismiss the trust and confidence [the litigants] have placed in their chosen counsel.  Additionally, the court must prevent litigants from using motions to disqualify opposing counsel for tactical purposes."); *Commonwealth Insurance v. Graphix Hot Line*, 808 F.Supp. 1200, 1203 (E.D. Pa. 1992).

      The burden is on the party seeking disqualification to clearly demonstrate that continued representation would be impermissible.  *See Hesling v. Avon Grove S.D., et al.,* CA No. 02-8565, 2007 WL 1030096, at *2 (E.D. Pa. 2007), *aff'd,* 2008 WL 2601334 (3d Cir. July 2, 2008); *Walsh v. Consolidated Design & Engineering,* CA No. 05-2001, 2008 WL 131135, at * 3 (E.D. Pa. January 14, 2008); *Shade v. Great Lakes Dredge & Dock,* 72 F.Supp.2d 518, 520 (E.D. Pa. 1999).

      Waiver is a valid basis for the denial of a motion to disqualify.  The court should consider the length of the delay in bringing the motion to disqualify, when the movant learned of the conflict, whether the movant was represented by counsel during the delay, why the delay occurred, and whether disqualification would result in prejudice to the nonmoving party.  In particular, the court should inquire whether the motion was delayed for tactical reasons.  Courts have not hesitated to deny motions to disqualify brought years after the conflict issue arose.  *Graphix Hot Line*, 808 F.Supp. at 1208 (E.D. Pa. 1992); *In re Rite Aid Corporation Securities Litigation,* 139 F.Supp.2d 649, 660-61 (E.D. Pa. 2001).

      The United States District Court for the Eastern District of Pennsylvania has adopted the Pennsylvania Rules of Professional Conduct as the standard for ethical conduct that attorneys appearing before the court must meet.  Even if a court finds that a violation of the rules of

professional conduct has occurred, the question of whether disqualification is an appropriate sanction is resolved through balancing various competing interests. *In re Rite Aid Securities Litigation*, 139 F.Supp.2d at 656 n. 7 (2001). The Third Circuit has stated that a court should disqualify an attorney only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule. It should consider the ends that the disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain the counsel of his/her choice and enabling attorneys to practice without excessive restrictions. *Rickards v. Certainteed Corp.*, CA No. 94-1756, 1995 WL 120231, at *3 (E.D. Pa. March 17, 1995).

**III. Analysis.**

    A. The Alleged Conflicts of Interest.

Rule 1.7 of the Pennsylvania Rules of Professional Conduct governs conflicts of interest that may arise from simultaneous representation of co-plaintiffs or co-defendants. A potential conflict does not automatically preclude concurrent representation. Rule 1.7 provides that an attorney may not represent two clients when the representation of one would be directly adverse to or would materially limit representation of the other, unless the attorney reasonably believes that representation of one will not adversely affect the representation of the other and both clients consent to the joint representation. *Kaiser*, 1997 WL 186329, at *2 (E.D. Pa. 1997); *Capriotty v. Bell*, CA No. 89-8609, 1991 WL 22134, at *2 (E.D. Pa. February 19, 1991).

Rule 1.7 contemplates two levels of conflict – egregious conflicts and conflicts where joint representation is permitted. There are some conflicts so irreconcilable that a client cannot agree to waive them and disqualification is proper even when there is a valid consent by the

client.  The line is crossed when it is unreasonable for an attorney to believe that representation of one of the clients will not be adversely affected.  *Capriotty*, 1991 WL 22134, at *5 (E.D. Pa. 1991); *Hesling*, 2007 WL 1030096, at *3 (E.D. Pa. 2007)(conflicts which threaten the confidence and respect of the community towards the bench and bar may not be waived even where the parties have consented to multiple representation).  Egregious cases are those were it appears to the court that the attorney will not be able to represent all the clients adequately or if the court believes that no waiver may cure the damage to the integrity of the judicial process that such joint representation will cause.  An irreconcilable conflict is most likely to arise in the criminal context.  *Kaiser,* 1997 WL 186329, at *3 (E.D. Pa. 1997).

Rule 1.7 provides expressly that two clients may, in certain circumstances, consent after consultation to representation by the same lawyer notwithstanding a potential conflict of interest.  *Graphix Hot Line*, 808 F.Supp. at 1207 (E.D. Pa. 1992).  *Hesling,* 2007 WL 1030096, at *3 (E.D. Pa. 2007)(In general, Rule 1.7 allows a waiver of a potential conflict of interest where each affected party gives informed consent.).  The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably would be pursued on behalf of the client.  Consideration should be given to whether the client wishes to accommodate the other interest involved.  The court must decide if the consent or waiver of potential conflicts is knowing and informed.  *Kaiser*, 1997 WL 186329, at *2 (E.D. Pa. 1997).

Plaintiff alleges that the Harkins firm jointly represents two constituencies of clients with unwaivable conflicts of interest, specifically: (1) clients who both admit and deny that the Warrick documents are authentic and (2) clients who both admit and deny that June McCrory reported that she was raped. *Plaintiff's Disqualification Memo* at pp. 18-22.

With respect to the Warrick documents, Plaintiff states that in their answers to the *Jackson I-III* complaints, Rohm and Haas and "certain other of the other R&H Defendants" expressly represented that Defendant Royce Warrick's interview notes are legitimate. *Id*. at p. 7. Plaintiff argues that this position is inconsistent with the answers of Defendants David Gartenberg, Celia Joseph, Wayne Davis and Michael McLaughlin, all of whom were participants in the original investigation of the McCrory matter.  According to Plaintiff, each of these four defendants "had direct knowledge of the form and/or substance [of] Warrick's notes," and each denied knowledge or information sufficient to respond to Plaintiff's fraud allegations, "even though the co-clients have direct knowledge that a fraud occurred." *Id.* at pp. 9-10, 33.  Plaintiff argues that "the interests of these various constituencies are not identical, or even consistent," and that the Harkins firm cannot represent Defendants who admit the Warrick notes are authentic at the same time it represents Defendants who deny the notes are authentic. *Id.* at p. 10.  *See* N.T. 8/6/08 at p. 7.  In addition, Plaintiff asserts that the Harkins firm "could not ethically file an answer" for Defendants Gartenberg, Joseph, Davis and McLaughlin "other than an admission that the documents were Warrick's true notes (ie., authentic), or a denial that they were the true notes (i.e., not authentic)." *Plaintiff's Disqualification Memo* at p. 10.  Plaintiff argues that the

Page 6

depositions of Defendants Davis and Joseph, taken in May 2008, "made clear that they do have knowledge and information with respect to whether the notes are authentic." *See* N.T. 8/6/08 at p. 7.[3]

Plaintiff has not produced any evidence of an egregious, irreconcilable conflict of interest between the Rohm and Haas Defendants with respect to the Warrick notes. While some of the Rohm and Haas Defendants have stated that the Warrick notes are authentic, and others have answered that they did not have sufficient knowledge, at the time of their answers, to respond to Plaintiff's fraud allegations, none of the Defendants represented by the Harkins firm have questioned the authenticity of the Warrick notes. The Rohm and Haas Defendants have presented a unified defense in denying Plaintiff's allegations of fraud. *See* N.T. 8/6/08 at p. 12. Plaintiff has pointed to no evidence to support his contention that Defendants Gartenberg, Joseph, Davis, and McLaughlin, who have denied Plaintiff's allegations of fraud, "have direct knowledge that a fraud occurred."

With respect to the issue of what June McCrory reported, Plaintiff asserts that "June McCrory consistently has maintained that she never informed *anyone* at R&H [Rohm and Haas] that she was raped by Plaintiff, yet the R&H Defendants contend that it was McCrory's purported report of a rape that triggered the Company's 1998 investigation. Thus, McCrory's interests are not identical to those of R&H (or anyone else) who contends that a rape occurred or was reported." *Plaintiff's Disqualification Memo* at p. 6.

---

[3] According to Plaintiff, during their depositions in the state court *Jackson* matter, Defendants Davis and Joseph were shown three versions of the Warrick interview notes. Both testified that they were unable to identify the documents. *Plaintiff's Disqualification Memo* at p. 12.

Page 7

June McCrory is not named in Plaintiff's Consolidated Amended Complaint, and, as Plaintiff acknowledges, she is a former, not a current, client of the Harkins firm. *See* N.T. 8/6/08 at p. 8. Thus, there is no simultaneous representation to trigger Rule 1.7. I reject Plaintiff's argument that it doesn't matter under Rule 1.7 "whether it is a current client or a former client, you can't be taking positions that are in direct conflict with the position of other clients whether they are former clients or current clients." *Id.*

At oral argument on the motion to disqualify, Plaintiff alleged that the Harkins firm represents "two constituencies of clients who have answered the complaint in two different ways, some who admit that a rape was reported to Rohm and Haas Company and some who denied that a rape was reported to Rohm and Haas Company, including June McCrory." *Id*. at p. 21. Plaintiff has offered no evidence to suggest that any current client of the Harkins firm has denied that a sexual assault was reported to Rohm and Haas. In addition, the Pennsylvania Superior Court has found, as a matter of fact, that at the state trial, "McCrory never denied that she was sexually assaulted by Jackson. She stood by her story that he performed non-consensual sex upon her." Plaintiff acknowledges that Superior Court finding but dismisses it as a "total anomaly." *Id.*[4]

---

[4] To the extent that Plaintiff is asserting that the Harkins firm cannot represent the Rohm and Haas Defendants because of its prior representation of June McCrory, Rule 1.9 would apply. In his list of fourteen alleged disciplinary violations by the Harkins firm, Plaintiff does not mention Rule 1.9. Plaintiff's Disqualification Memo at pp. 23-43. However, for the sake of the completeness of the record, I note that the standard for determining whether Rule 1.9(a) has been violated is the "substantial relationship" test. Under this test, the Court must determine: (1) the nature and scope of the prior representation; (2) the nature of the present lawsuit involving the former client; and (3) whether the former client revealed information to the attorney which may be relevant to the litigation and which may be detrimental to the former client. *See Rickards*, 1995 WL 120231, at *3 (E.D. Pa. 1995). Plaintiff has presented no evidence which would support a finding of a Rule 1.9 conflict, and I independently find no such evidence in the record before me.

Under Rule 1.7, continued representation in a potential conflict situation is permitted where: (1) the lawyer reasonably believes that the representation will not be adversely affected; and (2) the clients consent after full disclosure and consultation.  *Kaiser,* 1997 WL 186329, at *3 (E.D. Pa. 1997).  The Harkins firm, which knows the intricacies of this case (and the related cases) far better than this Court, has stated that all of its clients are unified in their defense which is to discredit Plaintiff's accusations of fraudulent conduct, and that none will be adversely affected by continued concurrent representation.  At this point, I find this belief reasonable.  *See id.,* at *3 and *Hesling*, 2007 WL 1030096, at *4 (E.D. Pa. 2007)(crediting counsel's knowledge of the case in permitting continued representation in a potential conflict case).  Furthermore, the Harkins firm has submitted for *in camera* review an affidavit of consent for each client which: (1) states the client has been given a copy of the Consolidated Amended Complaint and Plaintiff's Motion to Disqualify; (2) advises the client of the implications of joint representation and the advantages and risks that may arise; (3) encourages the client to contact the Harkins firm, or separate counsel, should he/she have any questions or concerns about the lawsuit(s) and/or any the motion to disqualify; and (4) attests that the client consents to continued representation and waives any potential conflicts of interest that may arise.  The affidavits submitted for *in camera* review conform to the requirements of Rule 1.7(b)(2).

In sum, I find that there is nothing in the record before me to establish an egregious irreconcilable conflict of interest such that disqualification of the Harkins firm is required despite the valid consent of its clients.  Because the Rohm and Haas Defendants have chosen to pursue a

unified defense against Plaintiff's charges, and because they have demonstrated their informed consent to joint representation, I find that any potential conflict in this case is relatively minimal and may be waived under Rule 1.7.

### B.  The Alleged Persistent Pattern of Obstructive Conduct,

Plaintiff contends that the Harkins firm "participated in an intentional, concerted effort to block Plaintiff from obtaining handwriting evidence from Royce Warrick.  [ . . .]  Such conduct cannot be reconciled with the firm's duties and responsibilities under the Pennsylvania Rules of Professional Conduct, and to the Plaintiff and the court."  *Plaintiff's Disqualification Memo* at p. 23.

All of the alleged obstructive conduct by the Harkins firm with regard to handwriting evidence from Royce Warrick occurred in the state court *Jackson I* case.  *Id.* at pp. 22-23, 46-61. This matter has been fully litigated in state court.  It has been the subject of a motion to compel and a motion for sanctions, both of which have been decided in that forum.  I reject Plaintiff's argument that discovery matters in the state court that allegedly meet the standard for obstructive conduct are "potentially relevant to this proceeding."  *See* N.T. 8/6/08 at p. 5.  Plaintiff has not met his burden of showing that discovery matters in state court establish that continued representation by the Harkins firm in this action would be impermissible.

### C.  The Alleged Improper Assertion of Privilege.

Plaintiff argues that at the May 2008 depositions of Defendants Davis and Joseph, "the Harkins firm  lawyers repeatedly asserted the attorney–client privilege to block Plaintiff's efforts to obtain evidence to support his fraud and abuse of process claims.  [ . . . ]  The assertion of the privilege is inconsistent with the crime-fraud exception to the attorney-client privilege.  Where,

as here, the claim is that the attorney and client conspired to corrupt a trial, the communications between them may not be shielded from discovery. The privilege may not be used as a sword or shield to defeat fraud and abuse of process claims based (in part) upon attorney-client communications." *Plaintiff's Disqualification Memo* at p. 46.

The depositions of Defendants Davis and Joseph were taken in the state court *Jackson I* case. The propriety of any assertion of attorney-client privilege should be litigated in that forum, and does not establish a basis for disqualification of the Harkins firm in this forum.

### D. The Alleged Disciplinary Violations.

Plaintiff argues that during the joint representation of its clients the Harkins firm has committed multiple violations of the Professional Rules of Conduct. Plaintiff cites to fourteen separate alleged violations, however, he acknowledges that the claims are interrelated. *Plaintiff's Disqualification Memo* at pp. 23-43.

The theme of Plaintiff's argument is that the Harkins firm has engaged in a course of action that cannot be reconciled with the requirements imposed by the Rules of Professional Conduct. He argues:

> It is apparent that the Harkins firm has conducted the litigation consistent with the wishes and interests of Rohm and Haas Company (and those others who have maintained that there was no wrongdoing in the original state court case). It is also apparent that the purpose of the joint representation was so that R&H, which has funded the defense of the R&H defendants, could control the tactical (and other) decisions in the litigation such that its interests in the litigation were advanced and protected to the fullest extent possible.

*Id.* at p. 33.

The "disciplinary violations" asserted by Plaintiff include alleged conflicts of interest regarding the authenticity of the Warrick notes and what June McCrory reported, and discovery matters in the state court, which have already been addressed.  Plaintiff presents additional allegations of wrongdoing by the Harkins firm – alleged withholding of the lawsuit from Defendants Davis and Joseph for four years, alleged breach of the duty of candor toward the tribunal, and alleged self-interest which prevents the firm from exercising independent judgment. *Id.* at pp. 35, 37, 42.

Plaintiff argues that at their depositions in May 2008, Defendants Davis and Joseph both testified that the first time they had seen the complaint in *Jackson I* was the fall of 2007, even though the case was filed in February 2004.  In addition, Defendant Davis was unaware of the claims against him at the time of his deposition.  Plaintiff theorizes that "[t]he testimony of Davis and Joseph explain why the lawsuit was withheld from them for four years.  The Harkins firm knew that the participants in the original investigation (excluding Warrick herself) would not support the authenticity of the Warrick evidence.  Therefore, in order to control them and the litigation, the Harkins firm entered appearances for them and then proceeded to keep them in the dark." *Id.* at pp. 24, 42-43.

I have reviewed the deposition testimony of both Davis and Joseph, and Plaintiff's characterization of their testimony is incorrect.  Plaintiff's counsel showed Defendant Davis the complaint in "the Amended Civil Action in the matter of Mark Jackson v. Rohm and Haas Company, April Term 2007, Number 2321."  Defendant Davis testified that he had first seen the document in the fall of 2007.  The complaint was forwarded to Defendant Davis who read the

complaint, without counsel being present, because Davis was out of the city at the time. *Rohm & Haas Defendants' Response in Opposition to Plaintiff's Motion to Disqualify* [Docket Entry No. 166]: Exhibit "A" (May 7, 2008 Deposition of Wayne G. Davis) at pp. 30-33, 35-38. The complaint, which bears an April 2007 Caption, was not filed in 2004. There is no basis for Plaintiff's allegation that this document was filed in 2004 and withheld from Defendant Davis for four years. With regard to his answer to the complaint in *Jackson v. Rohm & Haas*, April Term 2007, Number 2321, Defendant Davis testified that he "gave answers to the complaint," and reviewed his answer with counsel before it was filed. *Id.:* Exhibit "A" at pp.37-38, 41.

At the deposition of Celia Joseph, Plaintiff's counsel showed her a copy of the "Amended Civil Action," which he marked as Joseph Exhibit 1 and described as "the current complaint in the case about which you are presently being deposed."[5] Defendant Joseph testified that she saw the document in either 2007 or 2008. *Id.:* Exhibit "B" (May 15, 2008 Deposition of Celia Michaelson Joseph) at pp. 124-126. Plaintiff's Counsel explained that Joseph Exhibit 1 was "the amended complaint of the complaint that was initially filed in the Eastern District in this case in 2003," and again asked Defendant Joseph when she first saw Exhibit 1. Her response was that she first recalled seeing Joseph Exhibit 1 in 2007 or 2008, when she prepared her answer to the amended civil complaint in *Jackson v. Rohm & Haas*, April Term 2007, Number 2321. Again, there is no basis for Plaintiff to argue that the document he showed to Defendant Joseph had been withheld from her for four years.[6]

---

[5] As Plaintiff's Counsel acknowledged Joseph Exhibit 1 had "an unusual cover sheet on it" because it was transferred from federal court to state court. The first page of Exhibit 1 bore the Philadelphia Common Pleas Caption, *Jackson v. Rohm & Haas*, April Term 2007, Number 2321, and the second page bore the earlier federal caption, *Jackson v. Rohm & Haas,* Civil Action No. 03-5299. *Id.:* Exhibit "B" at pp. 156-160.

[6] When Plaintiff's Counsel incorrectly told Defendant Joseph that Joseph Exhibit 1 had been filed in September 2003, she again testified that she did not recall seeing it before 2007 or 2008. *Id:* Exhibit "B" at p. 160.

Plaintiff argues that the Harkins firm has filed documents and made misrepresentations of fact and/or law which constitute a breach of the duty of candor toward the tribunal. He focuses on disputes in the state court and cites as "one particularly egregious violation" representations made by the Harkins firm at a January 8, 2008 hearing in the Philadelphia Court of Common Pleas. Any alleged misconduct by an attorney in the state court must be litigated there. Plaintiff has not established a violation of the rules of professional conduct in this forum. Disqualification in this action is not an appropriate sanction for alleged ethical violations in different forum.

Plaintiff contends that the Harkins firm's "self interest" prevents it from exercising independent professional judgment and rendering candid advice to its clients in violation of Rule 2.1. Plaintiff argues that because he has identified the Harkins firm as a RICO enterprise, the firm has an interest in vindicating itself both with respect to the charges and its own reputation, and may have a separate self interest with respect to its professional services and/or professional liability.

The mere fact that Plaintiff has named the Harkins firm as a Defendant in this action and has called it a RICO enterprise does not create a hopelessly compromised situation that requires the Court to disqualify the Harkins firm from representing the Rohm and Haas Defendants. At this point, Plaintiff's broad allegations of fraud are simply allegations and in no way establish an actual conflict of interest. As discussed earlier, all of the Rohm and Haas Defendants have, to date, presented a unified defense in seeking to demonstrate that Plaintiff's claims are false. Further, all of the Rohm and Haas Defendants have been advised of the claims against the Harkins firm and the risks in a situation whether a firm providing joint representation is also a

defendant and represents itself.  Each Rohm and Haas Defendant has consented to continued representation by the Harkins firm after full disclosure.  In light of the knowing consent to continued representation by each client, and the lack of any actual conflict of interest at this time, I conclude that disqualification is not warranted.

I have considered all of Plaintiff's arguments as to the alleged rule violations and find that Plaintiff has not met his burden of establishing that a violation of the Rules of Professional Conduct has occurred and that disqualification of the Harkins firm is an appropriate means of enforcing the applicable disciplinary rule.

**IV.  Conclusion.**

In his motion to disqualify the Harkins firm, Plaintiff makes strong allegations, contending:

> Here, a fraud on Plaintiff and the Court, a fraud of the highest order, has been carried out for a period of years, in part because the lawyers have ignored their duties under the Rules of Professional Conduct.  These same lawyers now must be disqualified, and a Rule to Show Cause should be issued as to why they should not be referred to the Disciplinary Board of the Supreme Court of Pennsylvania.

*Plaintiff's Disqualification Memo* at p. 63.

Despite this strong language, Plaintiff has not established any actual conflict of interest that would make continued representation of the Rohm and Haas Defendants impermissible. Any potential conflict of interest is minimal and has been addressed by the informed consent of all of the Rohm and Haas Defendants, who have been adequately apprised of the alleged conflict and have, nonetheless, consented to continuation of the Harkins firm's joint representation. Plaintiff has not established disciplinary violations or any other misconduct in this forum which would support disqualification as an appropriate sanction.  Other factors weigh against the

Page 15

disqualification of the Harkins firm and the individually named attorneys. The Harkins firm has a long-standing relationship with many of the Rohm and Haas Defendants whose choice of counsel cannot be ignored. Plaintiff has long been aware of the Harkins firm's representation of the Rohm and Haas Defendants, and despite misconduct "over a period of years," has only recently filed his motion to disqualify the firm. The disputes between Plaintiff and the Rohm and Haas Defendants have a long and tortured history and disqualification of the Harkins firm would only engender further delay. In sum, Plaintiff has not met his burden to justify the Harkins firm's disqualification. His motion is, therefore, denied.[7]

BY THE COURT:

_____
M. FAITH ANGELL
UNITED STATES MAGISTRATE JUDGE

---

[7] As I advised both Plaintiff and his counsel at the August 6, 2008 hearing, I continue to have serious reservations about the litigation process Plaintiff's Counsel has chosen to pursue to secure relief for his client. I see no benefit to Mr. Jackson in the filing of ever expanding claims in multiple forums.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
Robert N.C. Nix Federal Building
900 Market Street, Suite 211
Philadelphia, PA   19107

**Chambers of**
**M. FAITH ANGELL**                                             P:   (215) 597-6079
United States Magistrate Judge                         F:   (215) 580-2165

*FAX / MAIL COVER SHEET*

**CASE NO. 05-4988**                                     **DISTRICT COURT JUDGE**: LHP

**TODAY'S DATE**: August 26, 2008                **LAW CLERK'S INITIALS**: JJK

**NAME**                                                                                                **FAX NUMBER**

1.     Richard J. Silverberg, Esq.                                                          215-546-8779

2.     John G. Harkins, Jr., Esq./Steven A. Reed, Esq./
        Eleanor Morris Illoway, Esq./Colleen Healy Simpson, Esq.      215-851-6710

3.     Michael Miller, Esq./Jason P. Gosselin, Esq./
        Grant Edward Nichols, Esq.                                                       215-988-2757