IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK JACKSON | : | CIVIL ACTION |
| v. | : | |
| ROHM & HAAS COMPANY, et al. | : | NO.   05-4988 |

### REPORT AND RECOMMENDATION

M. FAITH ANGELL                                                                                          December 16, 2008
United States Magistrate Judge

      The dispute between the parties spans over ten years and has been the subject of numerous lawsuits in both federal and state court. As the parties, and Judge Pollak, are intimately familiar with the course of the litigation, I will not repeat it here, except as necessary to explain my analysis. Presently before me are the Rohm & Haas Defendants' and the Liberty Life Defendants' motions to dismiss Plaintiff's Consolidated Amended Complaint. The Defendants argue that the Consolidated Amended Complaint ["CAC"] is dominated by frivolous claims and theories, and that Plaintiff's continued refusal to comply with Court Orders and to file a proper complaint warrants dismissal of the CAC with prejudice. *Rohm & Haas Defendants' Motion to Dismiss the Consolidated Amended Complaint* [Docket Entry No. 170][1] at pp. 7, 25. *See Liberty Life Defendant's Motion to Dismiss Consolidated Amended Complaint* [Docket Entry No. 171][2] at 2 ("[T]he [CAC] is an amalgam of all the others - incorporating virtually every scurrilous and incendiary allegation from pleadings past. Plaintiff's complaint should be dismissed in its entirety and with prejudice because it fails to offer a short and plain statement demonstrating Plaintiff's entitlement to relief. Plaintiff has disregarded the pleading mandates of the Federal Rules, despite warnings from the Court.")

---

[1]       Hereinafter "R&H Defendants' Motion to Dismiss CAC."

[2]       Hereinafter "Liberty Life Defendants' Motion to Dismiss CAC."

**I. The CAC Is Clearly An Improper Pleading.**

I have reviewed the entire record in all three federal *Jackson* matters[3], and conclude that the Consolidated Amended Complaint filed in the above-captioned matter is clearly improper.[4] In no way does the CAC comply with Rule 8 of the Federal Rules of Civil Procedure, which requires "a short and plain statement" of the grounds for the court's jurisdiction and of the claims showing that the plaintiff is entitled to relief. *See Fed.R.Civ.Pro. 8(a); In Re: Westinghouse Securities Litigation,* 90 F.3d 696, 702 (3d Cir. 1996)("Taken together, Rules 8(a) and 8(e)(1) underscore the emphasis placed on clarity and brevity by the federal pleading rules."). The CAC is one hundred and fifty-two pages long, presents twenty-five claims against fifty-one defendants (twenty-five of which are "John Does"), and includes ninety-three footnotes. It does not identify what each of the named Defendants is alleged to have done to warrant the multiple claims against them and, thus, lacks factual foundation. In addition, the counts are convoluted and are riddled with inflammatory and unwarranted conclusory allegations, and, therefore, is in violation of my May 21, 2008 Order directing Plaintiff to limit the consolidated amended complaint to claims for which he has a good faith basis.

---

[3]  *Jackson v. Rohm & Haas Company, et al.* [*Jackson I*], CA No. 03-5299; *Jackson v. Rohm & Haas Company, et al.* [*Jackson II*], CA No. 05-4988; and *Jackson v. Rohm & Haas Company, et al.* [*Jackson III*], CA No. 06-3682.

[4]  The Consolidated Amended Complaint was filed at Docket Entry No. 168, in Civil Action No. 05-4988 [*Jackson II*].

Plaintiff argues that Defendants are required to go through the CAC, "either a fact at a time, or a claim at a time," and show the Court where the complaint either goes against a current order or legal standard. *See N.T. 12/5/08* at p. 24. *See also Plaintiff's Response to the R&H Defendants' Motion to Dismiss CAC* [Docket Entry No. 173] at p. 2 (arguing that the basis for the R&H Defendants' motion to dismiss CAC is "unclear," where "Defendants have made no argument with respect to most of Plaintiff's claims, and instead devote much of their effort to the proposition that the Complaint should be dismissed as a sanction for failure to adhere to Court Rules and/or prior Court Orders."); and *Plaintiff's Response to Liberty Life Defendants' Motion to Dismiss CAC* [Docket Entry No. 175] at p. 31 (arguing that because the Liberty Life Defendants made no argument with respect to certain claims, the claims "are to be treated as uncontested"). I disagree. The CAC is manifestly improper and this is Plaintiff's *tenth* complaint in the federal actions (the first nine of which Defendants have responded to claim by claim).[5] I see no reason to require Defendants to address each and every fact and claim.

Nor is the Court inclined to do so, given the facts and circumstances of this litigation. I will, however, identify some glaring examples of improper claims/allegations in support of my conclusion that the CAC is an improper pleading.

---

[5] *See Plaintiff's Response to Liberty Life Defendants' Motion to Dismiss CAC* at p. 34 (noting that the Defendants did not made argument on each claim "as they had done in each of their past motions").

**A. The CAC Includes Claims Related To The Warrick Notes That The Court Has Consistently Ruled Are Frivolous.**

In *Jackson I*, Plaintiff first attempted to bring a claim under civil RICO based on allegations that the R&H Defendants and their counsel altered/manufactured the Warrick notes and offered perjured testimony related to these notes in a scheme to defraud the state court. *June 30, 2005 Opinion in Jackson I* [Docket Entry No. 52] at pp. 7-8. Judge Pollak, in a June 30, 2005 Opinion, granted Defendants' motion to dismiss, concluding that Plaintiff lacked standing under RICO because the alleged fraudulent conduct was entirely irrelevant to Plaintiff's alleged injury (loss of a jury verdict in state court). *Id.* at pp. 10-13.

Each time Plaintiff has attempted to resurrect the Warrick note allegations in *Jackson II* and *III*, Judge Pollak has rejected these claims as frivolous. *See, e.g., March 9, 2006 Opinion in Jackson II* [Docket Entry No.47] at pp. 10-11[6]; *July 7, 2006 Opinion in Jackson II* [Docket Entry No. 90] at pp. 2-3[7]; and *September 5, 2007 Opinion in Jackson III* [Docket Entry No. 47] at p. 4.[8]

---

[6] In the March 9, 2006 Opinion, Judge Pollak granted Defendants' motion for Rule 11 sanctions. He determined that the original complaint in *Jackson II* violated Rule 11(b)(2) because it included frivolous claims that the R&H Defendants perpetrated a fraud on the court by offering falsified evidence [the Warrick notes] in support of its defense of *Jackson I*.

[7] In the July 7, 2006 Opinion, Judge Pollak denied Plaintiff's motion for leave to file a second amended complaint without prejudice. Judge Pollak ruled that Plaintiff could file a second amended complaint to present claims based on his alleged termination by R&H. However, the proposed second amended complaint continued to assert elements from the original complaint [claims of obstruction of justice by submitting allegedly false evidence from the state court action] that Judge Pollak had already concluded were frivolous.

[8] The original complaint in *Jackson III* included factual allegations that "[t]he *Jackson I* defendants knew or should have known that the [Warrick] documents were fraudulent and that the testimony with respect to the documents had been perjured." *September 5, 2007 Opinion in Jackson III* at p. 4 (quoting Plaintiff's Original Complaint). Judge Pollak noted that these allegations "c[a]me close" to raising issues he had previously adjudicated frivolous and advised Plaintiff that "had [he] attempted to base a cause of action on purported facts such as that, he would have run afoul of [the] July 7, 2006 Order as well as Rule 11." *Id.*

In a recent January 10, 2008 Opinion in *Jackson II*, Judge Pollak wrote:

> "This [Warrick notes] issue has been litigated multiple times, yet Plaintiff apparently still fails to understand that the authenticity of the notes was irrelevant to the disposition of *Jackson I* because that case was dismissed for lack of RICO standing, an issue that has nothing to do with whether the interview notes were or were not genuine.  Therefore, as explained in this court's [March 9, 2006] sanctions order, Plaintiff's contention in this case that Defendants obtained a favorable result in *Jackson I* by relying on those interview notes is frivolous, as the notes had nothing to do with this Court's *Jackson I* decision. [ . . . ] That Defendants now claim that the notes are authentic - in the context of claims that make the authenticity of the notes relevant - does not constitute any inconsistency on Defendants' part."

*January 10, 2008 Opinion in Jackson II* [Docket Entry No. 152] at pp. 3-4.

In the CAC, Plaintiff reasserts and expands his allegations regarding the Warrick notes.  As part of his RICO obstruction of justice claims, Plaintiff asserts that Defendants knowingly used manufactured/altered documents and perjured testimony, have withheld a "third version" of the Warrick notes "to develop the record that served as the basis for their defenses in the state and subsequent Federal cases, including Defendants' sweeping effort to establish preclusion as a bar to those cases," and have affirmatively misrepresented in their answers to the various *Jackson* complaints that the Warrick evidence is legitimate and authentic.  *CAC* [Docket Entry No. 168] at pp. 97-98.  As a result of the Defendants' "pattern of racketeering," Plaintiff alleges that he was "legally injured within the meaning of RICO," and his injuries include, *inter alia*, "interference with the prosecution of Plaintiff's various claims."  *Id.* at pp. 100, 101.  By basing his RICO obstruction of justice claims on allegations related to the Warrick notes and interference with his state and federal cases, Plaintiff has "run afoul" of Judge Pollak's prior rulings.[9]

---

[9] *See also CAC* at p. 24 ¶104, which states "The actions of the R&H Defendants and Liberty Life were on behalf of themselves, as well as the *Jackson I* Defendants, who stood to gain a substantial benefit in the event that any of the actions described herein resulted in an advantage to them in the *Jackson I* litigation."

Plaintiff argues that "all of the obstruction [of justice] counts are supported by facts subsequent to [Judge Pollak's May 9, 2006 opinion] [. . . ] [a]nd then the prior facts then become part of the pattern." *N.T. 12/5/08* at pp. 25-26.  In a September 5, 2007 Opinion in *Jackson III*, Judge Pollak rejected an attempt by Plaintiff to append predicate acts alleged in *Jackson I* and *Jackson II* to the alleged retaliation acts in *Jackson III* to meet the closed-end continuity requirement for a pattern of racketeering activity.  *September 5, 2007 Opinion in Jackson III* [Docket Entry No. 48] at pp. 10-11.  Judge Pollak held that "Plaintiff cannot bootstrap claims from his prior lawsuits to satisfy the continuity requirement in the present action." *Id.* at p. 11. Similarly, Plaintiff cannot bootstrap claims already adjudicated frivolous, namely that the Defendants' alleged conduct with respect to the Warrick notes have interfered with his prosecution of claims in the state court and in *Jackson I*, to new allegations in the CAC.

**B. The CAC Fails to Identify What Each Defendant Is Alleged To Have Done To Warrant The Claims Against Them.**

In the CAC, named Defendants include individuals and entities who/which were previously named in earlier iterations of Plaintiff's complaint and then dropped, for example, Kelly G. Huller, Esq.  Ms. Huller is identified in an introductory paragraph of the CAC[10], and never mentioned again in the body of the CAC, except in the "Wherefore" paragraph in all of the RICO and most of the state law counts.[11]  At oral argument on the motions to dismiss, Plaintiff's counsel argued:

> "As far as Kelly Huller is concerned, I think I have heard enough on that as well, too.  Kelly Huller is in this case because she is represented by HARKINS

---

[10]   *See CAC* at p. 5 ¶ 27.

[11]   *See CAC* at pp. 102, 103, 104, 105, 106, 107, 108, 115, 117, 131, 132, 148, 150, 151, and 152.

   CUNNINGHAM.  Everyone who is represented by HARKINS CUNNINGHAM
   is bound by their actions in this case, that has been thoroughly briefed."

*N.T. 12/5/08* at pp. 24-25.[12]  There is no good faith basis for reinstating Defendants based on Plaintiff's conclusory statement that all prior clients are bound by the allegations that Plaintiff is asserting against HARKINS CUNNINGHAM.

  A similar argument is made with respect to the reinstatement of MORGAN LEWIS & BOCKIUS LLP as a named defendant.  The R&H Defendants have challenged this as improper, arguing that MORGAN LEWIS' only alleged involvement was with respect to the Warrick notes in the original state court action back in 2001.  *R&H Defendants' Motion to Dismiss CAC* at pp. 24-25.  In his response to the motion to dismiss, Plaintiff explains:

   "Morgan Lewis and Conrad O'Brien are not defendants because of their
  conduct in the original state court case.  Rather, the CAC is clear that the claims
  against the law firm are based upon the actions taken by Harkins Cunningham,
  their counsel in the state and federal cases: [ . . . ]
   At this late date, the defendant law firms remain unwilling to acknowledge
  the years-long pattern of misconduct that has permeated the state and federal
  courts, and to take the actions required of them.  And, as defendants' motion
  shows, these same lawyers remain completely unrepentant."

*Plaintiff's Response to the R&H Defendants' Motion to Dismiss CAC* at pp. 33-34.  Again, in the absence of any factual foundation, derivative claims against other law firms based on allegations against HARKINS CUNNINGHAM are improper.

---

  [12] In his written response to the R&H Defendants's motion to dismiss, Plaintiff argues that "it must be remembered that the acts and omissions of Harkins Cunningham were on behalf of all of its clients," "including Ms. Huller."  *Plaintiff's Response to the R&H Defendants' Motion to Dismiss CAC* at pp. 17 n. 19, 34 n. 28.

### C. The CAC Includes Claims That The Court Has Ruled Are Improper.

In Count XIII of the CAC, brought under ERISA, 29 U.S.C. §1132(a)(3), Plaintiff seeks monetary damages.  *CAC* at pp. 135, 139.  In two prior opinions, Judge Pollak has advised Plaintiff that monetary damages are not available under this statutory provision and, therefore, his request is "out of bounds."  *September 13, 2007 Opinion in Jackson II* [Docket Entry No. 125] at p. 12 and *September 5, 2007 Opinion in Jackson III* [Docket Entry No. 48] at pp. 26-28.

### D. The CAC Includes Claims Related To Alleged Events At Plaintiff's Residence That Are Without Foundation.

In the CAC, Plaintiff, as part of his RICO claims, charges all fifty-one named Defendants with harassment, intimidation, and retaliation occurring at his home.  Specifically, Plaintiff alleges that unknown persons: placed flower petals "of an unknown origin similar to those found at a funeral or memorial" on his car on the night of September 23, 2006; on three occasions in 2006, neatly placed flower petals on Plaintiff's driveway at night[13]; banged loudly on Plaintiff's door on February 15, 2007 at approximately 3:00 a.m.; parked a van across the street from Plaintiff's residence on March 2, 2007; and drove a black SUV on March 7, 2007 which "nearly struck" Plaintiff as he was crossing the street in front of his residence, and then stopped, with the driver rolling down his window and stating to Plaintiff: "I'm sorry I almost hit you.  You need to be more careful, especially in other situations when you're f***ing with the wrong people."  As to all these events, Plaintiff alleges that he perceived them to be "a threat to his person, safety

---

[13]   The dates on which Plaintiff alleges he woke up to discover flower petals on his driveway are October 19, 2006, October 31, 2006, and November 14, 2006.

and/or property intended to harass, intimidate, oppress, retaliate and dissuade him from continuation the pending litigation (both the *Jackson III* case, as well as the *Jackson I* and *II* cases) against the R&H/Liberty Defendants and/or others," and believed the incidents to be connected to the litigation as they coincided with various litigation events identified by Plaintiff. *CAC* at pp. 34-37 ¶¶ 142, 144, 147, 149 and pp. 40-42 ¶¶ 161, 163, 164.

Defendants argue that the allegations related to events occurring at Plaintiff's residence are "inherently incredible" and "totally lacking in foundation." *R&H Defendants' Motion to Dismiss CAC* at p. 15. *See Liberty Life Defendants' Motion to Dismiss CAC* at p. 17 ("Although Plaintiff alleges that he perceived these incidents to be related to his long-running dispute with Defendants, he does not allege any facts from which the Court could infer that Liberty Life was responsible for these bizarre incidents.").

In response, Plaintiff asserts that the CAC "lays a substantial foundation with respect to the challenged conduct," and argues that "[c]redibility determinations are for the fact-finder and not [the] Court in ruling upon a dismissal motion." *Plaintiff's Response to the R&H Defendants' Motion to Dismiss CAC* at p. 34. According to Plaintiff, he is not required to identify the perpetrators. *Plaintiff's Response to Liberty Life Defendants' Motion to Dismiss CAC* at p. 12. He explains:

> "Whether the challenged conduct is 'logical,' or matches an expectation of how an individual might behave under certain circumstances, is not the standard. The question is whether the Complaint contains facts which, when evaluated under the appropriate standards, state claims upon which relief can be granted. Pursuant to the Orders of September 5 and 13, 2007, and April 21, 2008, that question already has been answered.
> Defendants do not argue that the allegations are insufficient to state a claim upon which relief can be granted. They cannot. Credibility determinations are for the fact-finder and not the Court in ruling upon a dismissal motion, and the

> CAC lays a substantial foundation with respect to the challenged conduct. [citation omitted].  While Defendants argue that Plaintiff's claims are not credible, it is Defendants who have established a pattern of lying to Plaintiff, various Courts, and others, no matter the legal or ethical requirements or consequences.
> [ . . . ]
> Under the circumstances, it does not strain credulity that Defendants are behind the events at Plaintiff's residence, or that they would lie about it.  Again, the CAC lays a substantial foundation connecting the events to the litigation.  At the pleadings stage, Plaintiff is not required to prove his case, but only to state a claim upon which relief can be granted."

*Id.* at pp. 13-15.

The legal standards cited by Plaintiff are correct.  However, Plaintiff's characterization of the CAC as laying a "substantial foundation" to support this claim is not.  Plaintiff may believe that all fifty-one named Defendants are connected to the alleged incidents "perpetrated" by unknown persons at his home, but he alleges no factual basis for this belief in the CAC.  The allegations relative to alleged incidents at Plaintiff's residence are manifestly deficient for purposes of stating a RICO obstruction of justice claim.[14]

---

[14] As the allegations related to incidents at his residence first appeared in the CAC, I reject Plaintiff's argument that Judge Pollak's prior orders of September 5, 2007 in *Jackson III* and on September 13, 2007 in *Jackson II* "answered the question" as to whether these allegations state a claim.

The April 22, 2008 Order of Judge Pollak dismissed "all outstanding motions without prejudice," and directed me to participate in moving the cases forward.  *April 22, 2008 Opinion in Jackson II* [Docket Entry No. 160].  The Order contained no analysis and in no way can be read, as Plaintiff has argued, as a determination by Judge Pollak that Plaintiff's proposed third amended complaint in *Jackson II* stated claims upon which relief can be granted.  See *Plaintiff's Response to the R&H Defendants' Motion to Dismiss CAC* at pp. 10-11 ("In denying (in the Opinion of April 21, 2008) Plaintiff's motion for leave to amend without prejudice, the district court determined that the *Jackson III* proposed Third Amended Complaint was not futile, and stated claims upon which relief can be granted.").

## II.  Dismissal Of The CAC With Prejudice Is Warranted Under A *Poulis* Analysis.

Defendants have requested that the CAC be dismissed with prejudice.  *R&H Defendants' Motion to Dismiss CAC* at p. 32*; Liberty Life Defendants' Motion to Dismiss CAC* at p. 21.  Defendants argue that the Court has authority to dismiss the CAC with prejudice under its inherent power to manage cases before the Court, or in the alternative, under Rule 12(f) and/or Rule 8.  *R&H Defendants' Motion to Dismiss CAC* at pp. 6-7, 25-26.  *See also N. T. 12/4/08* at pp. 5-10 (R&H Defendants' Counsel argues: "There are many sources for authority for you to do what we think you should do, which is to dismiss this action with prejudice," and cites Rules 8, 41(b), 9(b), 12(b)(6) and 12(f), and the inherent authority of the Court to manage cases before it).  The R&H Defendants suggest that the *Poulis* factors apply in this situation, and argue that each prong of the *Poulis* test weighs in favor of dismissal of the CAC with prejudice.  *R&H Defendants' Motion to Dismiss CAC* at pp. 26-32.

At oral argument on the Defendants' motions to dismiss the CAC, Plaintiff's Counsel chose to rest on his submissions on the *Poulis* issue.  *N.T. 12/5/08* at p. 23.[15]  In his written

---

[15]     At the beginning of the argument, I asked Counsel for the Defendants to tell me under what authority or statute they were asking the Court to apply the *Poulis* standard.  *N.T. 12/05/08* at pp. 3-4.  As discussed in the text above, Counsel for the R&H Defendants cited various specific rules and the inherent authority of the Court to manage cases.  When asked if he wished to comment on the *Poulis* issue, Plaintiff's Counsel replied: "I think we will just rest on our submissions other than to say your first question today to Mr. Reed [Counsel for the R&H Defendants] pertained to *Poulis*, that was not answered by Mr. Reed.  *Poulis* has six elements.  I don't remember him answering your inquiry about it." *Id.* at pp. 22-23.  As noted above, the R&H Defendants has briefed each of the six *Poulis* factors and argue that all weigh in favor of dismissal with prejudice.

response to Defendants' *Poulis* argument, Plaintiff did not address any of the six factors, instead, he wrote:

> "In what can only be considered a 'fantastic' argument, Defendants move for dismissal under *Poulis v. State Farm Fire and Casualty Co.,* 747 F.2d 863, 868 (3d Cir. 1984), where a lawyer was sanctioned for missing deadlines. Defendants argue that each of the six *Poulis* facts [*sic*] weighs in favor of dismissal.
> Plaintiff was directed to file the CAC pursuant to the Order of May 21, 2008 consolidating *Jackson II* and *Jackson III*. Defendants' *Poulis* argument is utter nonsense. [citations to the R&H Defendants' brief omitted]"

*Plaintiff's Response to the R&H Defendants' Motion to Dismiss CAC* at pp. 36-37.

As discussed above, I find that the CAC fails to comply with the basic pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, and does not comply with prior orders of the Court in violation of Rule 41(b) of the Federal Rules of Civil Procedure. Given the lengthy history of this litigation and the present procedural posture, and consistent with the Court's inherent power to manage cases before it, I will address whether dismissal of the CAC with prejudice is warranted under a *Poulis* analysis. *See Briscoe v. Klaus,* 538 F.3d 252, 258 (3d Cir. 2008)(because dismissal with prejudice is a drastic sanction, it is imperative that the District Court have a full understanding of the surrounding facts and circumstances pertinent to the *Poulis* factors before it undertakes its analysis). *See also Hernandez v. Palakovich*, No. 06-2060, 2008 WL 4299279 at *5 n.7 (3d Cir. September 19, 2008)(the District Court has inherent power to dismiss a case *sua sponte* for failure to follow its orders).[16]

---

[16] The Third Circuit has held that a court should look first to rule-based or statute-based powers before turning to its inherent sanctioning power. *Klein v. Stahl GMBH, et al.,* 185 F.3d 98, 110 (3d Cir. 1999).

The *Poulis* analysis requires the Court to balance six factors to determine whether dismissal of a case is warranted: (1) the extent of the *party's* personal *responsibility*; (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith*; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions*; and (6) the *meritoriousness* of the claim or defense. *Briscoe*, 538 F.3d at 258 (3d Cir. 2008). Not all of the factors need weigh against a plaintiff to warrant dismissal. *Hernandez*, 2008 WL 4299279 at *4 (3d Cir. September 19, 2008).

In this case, I find that at least five of the six *Poulis* factors weigh in favor of dismissal of the CAC with prejudice. First, I find Mr. Jackson personally responsible for the content of the CAC. After this litigation was returned to me for pretrial management and to "discuss with the parties how best to move this case forward," I ordered the parties to be present at a May 20, 2008 hearing. *See April 22, 2008 Order in Jackson II* [Docket Entry No. 161]. In the April 22, 2008 Order, I stated: "Counsel [ . . . ] are reminded that in filing any motion or pleading, they are bound by Rule 11 of the Federal Rules of Civil Procedure." *Id.* at p. 2.

At the May 20, 2008 hearing, I explained that I had required the parties to be present "because I really do want to emphasize that this case has a history," and is a "fairly heavily litigated matter." *N.T. 5/20/08* at p. 4. I expressed concern for the course of this litigation, and directed Plaintiff's Counsel to "prepare a complaint which encompasses all the claims he believes in good faith he can raise before the Court based on whatever actions he believes the respondents have exerted against his client." *Id.* at pp. 4-5. Plaintiff's Counsel was advised: (1) to be concise; (2) that I believed a consolidated amended complaint of over one hundred pages

was unrealistic; (3) that he was bound by all rules of court; (4) that all prior rulings by Judge Pollak would be applied when reviewing the consolidated complaint; and (5) that the consolidated amended complaint was Plaintiff's final document; no more amendments would be permitted. *Id.* at pp. 8, 9, 11.

The May 20, 2008 hearing was followed by a May 21, 2008 Order permitting Plaintiff to file a consolidated amended complaint "alleging all claims for which he has a good faith basis." *May 21, 2008 Order in Jackson II* [Docket Entry No. 163]. Plaintiff was advised that the consolidated amended complaint "must be concise and must comply with all federal and local rules," and that the Court would not permit later amendments to this pleading. *Id.*

Because Mr. Jackson was present at the May 20, 2008 hearing and heard my concerns about the way this action was being litigated, was instructed to file a proper consolidated amended complaint, and was warned that there would be no more amendments, I conclude that he is personally responsible for the content of the CAC.[17]

Second, there is no question that Plaintiff's failure to file a proper complaint during this drawn-out litigation has prejudiced the Defendants and impeded their ability to prepare a defense. The CAC is Plaintiff's tenth iteration of his claims in this forum. The Defendants have had to answer all ten complaints, in which the scope of the claims and the number of named Defendants and co-conspirators have multiplied, and the breadth of the conclusory, baseless allegations has expanded. Over five years after Plaintiff first filed in this forum, Defendants have yet to see a proper complaint which gives them fair notice of the claims against them.

---

[17] And, presumably, Mr. Jackson was apprised by counsel of the May 21, 2008 Order.

Third, the history of dilatoriness in this litigation is clear.  In several prior opinions, Judge Pollak has commented on Plaintiff's steadfast refusal to file a proper complaint.  For example: (1) in a March 9, 2006 Opinion in *Jackson II*, Judge Pollak determined that Plaintiff' original complaint was "dominated by claims which are without warrant and frivolous" and that Plaintiff's pleading of all of his federal causes of action was "manifestly deficient;"[18] (2) in a July 7, 2006 Opinion in *Jackson II,* Judge Pollak determined that "the second amended complaint that [Plaintiff] proposes to file retains substantial elements from his original complaint that I have already determined, in the opinion filed on March 9, 2006, to be frivolous. [. . . ]  For Jackson to continue to assert, in his proposed second amended complaint, claims and theories that I have already found frivolous in an exercise in futility, and granting him leave to file his proposed second amended complaint would, therefore, be inappropriate;"[19] (3) in a September 5, 2007 Opinion in *Jackson III*, Judge Pollak ruled that "while several of Mr. Jackson's claims [in both the original complaint and the amended complaint] are tenuous at best, they fall just short of the threshold for Rule 11 sanctions;"[20] and (4) in a January 10, 2008 Opinion in *Jackson II*, Judge Pollak noted "Plaintiff's penchant [ . . .] for making the same argument no matter how often this Court rejects it," and the need to deter Plaintiff's "abusive litigation practices."[21]

---

[18]     *March 9, 2006 Opinion in Jackson II* [Docket Entry No. 47] at pp. 10, 12, 13 n.6, 17.

[19]     *July 7, 2006 Opinion in Jackson II* [Docket Entry No. 90] at pp. 2, 3.

[20]     *September 5, 2007Opinion in Jackson III* [Docket Entry No. 47] at p. 4.

[21]     *January 10, 2008 Opinion in Jackson II* [Docket Entry No. 152] at pp. 4-5 n.1.

In addition, during several Court hearings at which Mr. Jackson was present, I have noted my concerns about the pleadings in this litigation. For example, at an August 6, 2008 hearing on Plaintiff's Motion to Disqualify Counsel for the R&H Defendants, I opined that Mr. Jackson's interests were getting lost the course of this litigation.  I questioned whether the "multi-faceted complaints [and] the kind of motions that have resulted," were benefitting Mr. Jackson "who is the integral person in this process."  *N.T. 8/6/08* [Docket Entry No. 181] at pp. 29-30.  The pattern of continued failure to file a proper complaint spans the life of this case and continues to this day.

Fourth, Plaintiff's consistent failure to file a proper complaint, despite repeated directives from the Court, can only be viewed as willful or in bad faith.  As discussed below, Plaintiff's Counsel has already been sanctioned under Rule 11 in this case for filing a complaint dominated by frivolous claims.  Since then, Plaintiff has been afforded numerous opportunities to file a proper complaint, yet he has persisted in raising the same frivolous claims and adding new baseless allegations with every new proposed complaint.  This professionally irresponsible and inexcusable behavior cannot be tolerated.

Fifth, I conclude that there are no alternative sanctions to dismissal with prejudice which will be effective.  On March 9, 2006 in *Jackson II*, Judge Pollak sanctioned Plaintiff's Counsel in excess of $80,000.00 for filing a complaint which contained frivolous claims.  Since then, Plaintiff has repeatedly filed new iterations of his claims that resurrect claims previously ruled frivolous and adding ever expanding baseless allegations.  The Court has no assurance that if permitted to amend his complaint yet again, Plaintiff will limit himself to claims for which he has a good faith basis.

The sixth *Poulis* factor, the meritoriousness of the plaintiff's claims, is the only factor that does not weigh heavily in favor of dismissal. While the CAC is riddled with inflammatory and unwarranted conclusory allegations which lack factual foundation, some of Plaintiff's claims may have merit and/or have survived prior motions to dismiss. I find, therefore, that the sixth *Poulis* factor weighs against dismissal of the CAC with prejudice.[22]

After considering the six *Poulis* factors in light of Plaintiff's conduct, I am compelled to conclude that dismissal of this action with prejudice is appropriate and necessary.

In support of this conclusion, I echo Judge Pollak's comments in a March 9, 2006 Opinion in *Jackson II*:

> "[I]n the course of this hard-fought litigation, [Plaintiff's] Counsel's zeal [has] undermined his judgment; very regrettably, his zeal has taken him well beyond the bounds of negligence and into a realm of relative indifference to the legal setting in which he [is] crafting his pleadings. It should be added that, [ . . . ] this is not the first lawsuit between the parties - in fact, it is the third lawsuit by the same plaintiff against the same core defendants, and arising out of the same alleged harms (but with the cadres of accused defendants and the categories of alleged harms enhanced at each iteration of the charges) [. . .]"

*March 9, 2006 Opinion in Jackson II* at pp. 18-19. I would add, that since the March 9, 2006 Opinion, Plaintiff's Counsel's zeal has gone far beyond relative indifference and has risen to the level of a willful disrespect for the Court and his opposing counsel. Under a *Poulis* analysis, in light of the circumstances of this litigation, I conclude that dismissal of the CAC with prejudice is warranted.

---

[22] The potential meritoriousness of a plaintiff's claim alone cannot overcome the weight of the five other factors. *See Briscoe*, 538 F. 3d at 263 (3d Cir. 2008)(no single *Poulis* factor is dispositive).

# **RECOMMENDATION**

For the reasons set forth above, it is recommended that the R&H Defendants' Motion to Dismiss the Consolidated Amended Complaint [Docket Entry No. 170], and the Liberty Life Defendants' Motion to Dismiss the Consolidated Amended Complaint [Docket Entry No. 171] be **GRANTED**, and that the Consolidated Amended Complaint in the above-captioned matter be **DISMISSED WITH PREJUDICE.**

BY THE COURT:


  S/M. FAITH ANGELL
M. FAITH ANGELL
UNITED STATES MAGISTRATE JUDGE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**
Robert N.C. Nix Federal Building
900 Market Street, Suite 211
Philadelphia, PA    19107

| | |
|---|---|
| **Chambers of** | |
| **M. FAITH ANGELL** | P:   (215) 597-6079 |
| United States Magistrate Judge | F:   (215) 580-2165 |

*FAX / MAIL COVER SHEET*

**CASE NO.**   05-4988           **DISTRICT COURT JUDGE:** LHP

**TODAY'S DATE**: December 16, 2008      **LAW CLERK'S INITIALS**: JJK

**VIA FAX:**

| NAME | FAX NUMBER |
|---|---|
| 1.   Richard J. Silverberg, Esq. | 215-546-8779 |
| 2.   John G. Harkins, Jr., Esq./Eleanor Morris Illoway, Esq./ Steven A. Reed, Esq. | 215-851-6710 |
| 3.   Michael J. Miller, Esq./Jason P. Gosselin, Esq./ Grant Edward Nichols, Esq. | 215-988-2757 |