# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK JACKSON,<br>                Plaintiff,<br><br>v.<br><br>ROHM & HAAS COMPANY, et al.,<br>                Defendants. | Civil Action No. 05-4988 |

**OPINION**

March 19, 2009                                                                                                        Pollak, J.

Plaintiff Mark Jackson has filed a "Motion to Vacate the Reference of the Instant Matter to Magistrate Judge M. Faith Angell" (Docket No. 196), seeking relief under 28 U.S.C. § 636(c)(4). Defendants have responded in opposition (Docket Nos. 201, 202). The motion is ripe for disposition.

**I.     Background**

In 2007, plaintiff Mark Jackson had two separate lawsuits pending before me, one filed in 2005 and the other in 2006. The suits were related and both arose, in part, from an earlier 2003 federal lawsuit, dismissed by me in 2005. Magistrate Judge M. Faith Angell played a valued role in all these actions at different times. In September of 2007, I decided motions to dismiss in the two pending cases, and then ordered that both cases

would be referred, with the consent of all parties, to Judge Angell under 28 U.S.C. § 636(c).

In May 2008, Judge Angell consolidated the two pending cases and set about the task of moving them forward, including (1) setting a date for Jackson to submit a consolidated amended complaint ("CAC"), and (2) outlining proposed discovery procedure. In June, Jackson submitted the CAC[1] as well as a motion to disqualify Harkins Cunningham, the law firm representing the Rohm & Haas defendants. All defendants filed motions to dismiss, and the Rohm & Haas defendants filed an opposition to the motion to disqualify. Judge Angell held a hearing on the disqualification issue in early August, denying the motion shortly thereafter.

In mid-September, Jackson filed a motion for a preliminary injunction to bar a merger between defendant Rohm & Haas and another corporation (not a named party) and to bar the purchase by defendant Liberty Life of yet another corporation (also not a named party). In a separate request by letter, Jackson asked that the court issue a "status quo" order to stop the merger and the acquisition activities from progressing pending decision on his injunction motion; Judge Angell denied that request. Judge Angell has issued a number of orders scheduling arguments on defendants' motions to dismiss and plaintiff's motion for an injunction as well as redefining when discovery would begin.

---

[1] The CAC is 152 pages long and presents twenty-five claims against fifty-one defendants. Among the claims are multiple allegations, brought against all the defendants, of obstruction of justice, conspiracy, fraud, retaliation, and other wrongful acts in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO).

She also filed a report and recommendation, in November, advising that I deny Jackson's motion for a preliminary injunction. In short, in the months since Judge Angell's May 2008 consolidation order, this lawsuit has been active and contentious.[2]

On October 16, 2008, Jackson filed this motion asking me to vacate the reference of the case to Judge Angell. He seeks to have the case removed from Judge Angell in its entirety for reasons enumerated below.[3]

## II.  Analysis

A.  <u>The procedural propriety of the motion</u>

As a preliminary matter, defendants argue that Jackson's motion amounts to allegations of bias, and that such allegations must first be lodged with the magistrate judge as a motion for recusal under 28 U.S.C. § 455 — not as a motion to the district court judge to vacate the reference under 28 U.S.C. § 636(c)(4). They ask me to dismiss the motion as procedurally deficient, citing to cases like *Doe v. Nat'l Bd. of Med. Exam'rs*, No. Civ. A. 99-4532, 2001 WL 1003206, at * 3 (E.D. Pa. Aug. 14, 2001); and *Clay v. Brown, Hopkins & Stambaugh*, 892 F. Supp. 11, 13 (D.D.C. 1995).[4]

---

[2]  This summary is but a sketch of all the submissions and decisions in this consolidated lawsuit since May.

[3]  In the time since plaintiff filed his motion to vacate, Judge Angell also issued a report and recommendation advising that I grant defendants' motions to dismiss. Jackson submitted a memorandum regarding this report and recommendation by way of supplement to his motion to vacate the reference (Docket No. 241).

[4]  Jackson himself makes use of the *Doe* opinion in his motion. I assume its guidance regarding § 455 was not lost on him, but rather, that he himself considered his averments as something beyond bias.

While I agree with defendants' recitation of the operative procedure concerning allegations of bias, Jackson's charges extend beyond that realm. In his motion to vacate, and in lengthy objections to other orders of Judge Angell, Jackson implies, and also appears to state directly, that Judge Angell is deliberately obstructing his case and knowingly colluding with the defendants. The following are but a few examples of such allegations:

> ... the Court clearly has permitted improper external influences to invade the judicial process. At a minimum, the appearance of judicial bias is inescapable.

Motion to vacate at 14.

> These actions cannot be reconciled with the Magistrate Judge's obligation to fairly and impartially determine the matters before her, and her own statements concerning moving the case forward, but rather reflect a clear pattern of conduct intended to protect defendants and to prejudice plaintiff.

*Id*. at 28.

> [T]he present question is ... whether Judge Angell's actions have been intended to assist R&H and/or utilized by R&H officials to avoid the mandated reporting and disclosure requirements.

Amend. Obj. (Docket No. 216) at 12-13. These are deeply serious charges — charges not simply that Judge Angell is prejudiced against the plaintiff (charges that are disturbing enough in themselves), but that Judge Angell has taken steps designed to promote defendants' position and both disparage and materially disadvantage plaintiff's position.

In light of the gravity of the allegations leveled by Jackson against Judge Angell, I will review the motion under § 636(c)(4).[5]

B.   The substance of the motion

Jackson's motion stands on three broad propositions, each illustrated by more-specific allegations, that he contends create the kind of "extraordinary circumstances," 28 U.S.C. § 636(c)(4), that would call for vacating the reference of a case to a magistrate judge: first, that Judge Angell has demonstrated "severe bias"[6] in favor of the defendants and against plaintiff; second, that Judge Angell has failed to follow her own orders; and third, that her decisions have improperly advantaged the defendants to the detriment of the plaintiff.[7]   Pl. Motion at 4, 14, 17.  In short, Jackson asserts that Judge Angell has shown egregious favoritism for big commercial concerns and disfavor for individual litigants, himself in particular.  He asserts that she has indicated, through orders, that she will manage this litigation in particular ways, only to conduct herself subsequently in a

---

[5]   "Notwithstanding any provision of law to the contrary, the court may, for good cause shown on its own motion, or under extraordinary circumstances shown by any party, vacate a reference of a civil matter to a magistrate judge under this subsection."

[6]   *See, e.g.,* Plaintiff's Supplemental Memorandum (Docket No. 241) at 1.

[7]   The motion purports to include a fourth broad area, one that outlines how Judge Angell allegedly grew "hostile" toward Jackson at some point this summer in the wake of events in the litigation and in the corporate lives of two of the defendants.  Pl. Motion at 28.  All this appears subsumed in the other three areas and therefore does not call for separate analysis.  The same is true of Jackson's latest arguments in his supplemental memorandum to this motion (Docket No. 241).

fashion directly contrary to those orders. He finally asserts that Judge Angell's decisions and actions on a number of issues connected to this lawsuit have intentionally aided the defendants and obstructed Jackson's litigation process. The defendants respond, in summary, that Jackson has failed to demonstrate bias; that he is merely unhappy with Judge Angell's decisions; and that he should not be permitted to "judge shop."

Once the parties to a civil suit consent to a reference of their case to a magistrate judge under 28 U.S.C. § 636(c)(1), the district judge may only vacate that reference in one of two ways: *sua sponte* for good cause shown, or on motion of a party upon a showing of "extraordinary circumstances" by that party. 28 U.S.C. § 636(c)(4) (quoted *supra* note 5). In seeking to compass the limits of "extraordinary circumstances," it is instructive to quote at length from an opinion of the United States District Court for the District of Columbia:

> The legislative history of § 636(c)(4) suggests that the District Court's power to vacate a referral to a Magistrate Judge should be exercised only "where it is appropriate to have the trial before an article III judicial officer because of the extraordinary questions of law at issue and judicial decision making is likely to have wide precedential importance." 12 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure: Civil § 3071.3 (citing S.Rep. No. 74, 96th Cong., 1st Sess 14 (1979)). Circumstances warranting exercise of this power are described as "rare." *Id.* Although the legislative history sheds no light on the scope or application of the "good cause shown" and "extraordinary circumstances" standards, commentators assert that the authority provided for by § 636(c) was "certainly not meant to permit a party to argue that rulings by the magistrate judge warranted withdrawal of the case." *Id.* As a general rule, "[c]ourts have not been receptive to the argument that extraordinary circumstances justified withdrawal of the case." *Id.*

*Manion v. American Airlines, Inc.,* 251 F. Supp.2d 171, 173 (D.D.C. 2003). As directed by the statute, I will review Jackson's motion for a proper showing of extraordinary circumstances.

I will also consider, for the following reasons, whether I should vacate the reference *mea sponte*. First: if, without regard to whether a magistrate judge had been asked to recuse, I myself were persuaded that a magistrate judge was biased — let alone intentionally conducting the reference to favor one party and disfavor another — I would vacate the reference *mea sponte,* without waiting for a party to demonstrate "extraordinary circumstances," in order to ensure fairness and to protect the integrity of the judicial process. Second: in exercising my *mea sponte* responsibilities, I would be prepared to vacate a reference in any situation in which it had become apparent that the dynamics of the triangular interactions of counsel with each other and with the magistrate judge had deteriorated in a fashion detrimental to the expeditious movement of the litigation forward, notwithstanding that the magistrate judge had been entirely blameless.

1. *Alleged demonstrations of "severe bias"*

I find on the record no basis for the plaintiff's charge that Judge Angell is biased against him and in favor of defendants. In reviewing this charge, I will address the utterances of Judge Angell to which plaintiff takes particular exceptions in his motion.

A. Jackson quotes language from an August 6, 2008 hearing before Judge Angell where she referred to some of the defendants as "large well known respected firms" (Aug. 6, 2008 Hearing Trans. at 30:12-13). Jackson then construes this as an announcement that

"if (in the Court's view) defendants are large, well-known, and/or respected, they are incapable of wrongdoing." Pl. Motion at 7. On its face, this statement does not suggest what Jackson asserts that it suggests. Further, the statement appears in a larger exchange between Judge Angell and plaintiff's counsel wherein Judge Angell observed, appropriately, that she could not understand how plaintiff's counsel could believe that the huge, complex, multi-faceted litigation he had been pursuing for years "will benefit your client who is the integral person in this process."[8] A lengthy excerpt from the hearing is helpful to the analysis here:[9]

> MR. SILVERBERG [plaintiff's counsel]: One last point which is that [law firm Harkins Cunningham is] a defendant and an enterprise under the racketeering statute. Once you are a defendant, and in this particular instance, a RICO enterprise, you have a self-interest.
> Your interest is in vindicating yourself, and once you have an interest in vindicating yourself, how can you possibly be carrying out the responsibilities that you need to carry out on behalf of your clients when

---

[8] A minute later, Judge Angell reiterated her doubts:

> You are representing Mr. Jackson's interest, but I am not sure at this point where his interests are lost in this complexity of litigation, you know, a hundred and some pages here, and something else there, and then in the meantime, Mr. Jackson as best I can figure out, is lost in the forums.
> I am not sure he is the subject of this after a while. I don't [know] whether this is just an exercise in complexity, whether this is some sort of cause, but I have serious concerns as to how this has or will benefit Mr. Jackson. If we are looking at the representation issues, that is some of my concern.

Transcript of August 6, 2008 Hearing.

[9] The hearing concerned plaintiff's motion to disqualify the law firm of Harkins Cunningham. Harkins Cunningham not only represents the Rohm & Haas defendants, the firm itself has been named a defendant. This excerpt begins near the end of plaintiff's counsel's oral argument regarding the motion.

8.

your self-interest is in vindicating yourself. I don't know. I think the answer is your [sic] can't, and before they were a defendant, they were still an enterprise.

They just became a defendant in the consolidated amended complaint. Again, they were a defendant once before, but they are – they have been an enterprise in prior iterations of the complaint, before the consolidated amended complaint. So it still applies.

They still have a self-interest in vindicating themselves and in vindicating their advice to their clients, and with that present in the case, they cannot continue to represent these clients under these circumstances.

THE COURT: Counsel, in the most elementary of motions to disqualify, usually the standing of the opposing counsel is not only the issue of judicial and efficiency and economy, et cetera, et cetera.

There is a real question about what standing the opposing counsel has in this type of matter where you are arguing that they have not met their level of service or their compliance with the ethics rules in their handling of this case.

How do you see that you have standing if, in fact, there is consistency that the notes are what they are, which is notes, and that she did report? There may be some dispute as to what the wording was, but she clearly had something to say, which as I recall was the beginning for the purposes of the process that I have dealt with.

I have some trouble other than your desire because you believe that, in fact, they have been less than cooperative on discovery, your desire to have them disqualified. I don' t know. That sounds more self-serving than legitimate.

MR. SILVERBERG: In the section where we identify obstructive conduct and in the section where we go through each of the disciplinary rules, every attorney has standing because the rules impose it on every attorney against every other attorney.

In the *Merlino* case we cite to the Court where it talks about an attorney facing criminal or disciplinary charges for his actions in the case, aren't going to be able to pursue the client's interests free from his own interests.

What has happened here is that once there is an infection in the representation, what we have had occur here is there has been an interference with our ability, the plaintiff's ability to get the evidence and –

THE COURT: Well, that is your representation, that you believe they have hindered your ability to prosecute your case.

As to whether they have been cooperative or not, I don't think that falls squarely within the rules. That may have something to do with my rules as far as Rule 26 is concerned, but as to whether they are feathering their own interest as against their clients' interest, you have raised it, I'm somewhat uncomfortable with your standing, and obviously I will look at the consents.

But, I can find in my mind especially in the federal forum, which is where we are, I can find little other than your own desires to have a more favorable scenario for the purposes of litigating, I can't find much else.

You know, your argument that they are, in fact, a RICO enterprise, that is your representation. There is certainly no finding, there is nothing that makes it a RICO case on its face. It is your representation that that's what this is.

MR. SILVERBERG: We believe we have submitted a comprehensive motion to the Court –

THE COURT: Oh, you have.

MR. SILVERBERG: – fully supportive of why there should be a disqualification, and if the Court is of the view that that motion does not support our position, we will accept the Court's – obviously accept whatever the Court decides.

But, beyond what we have submitted in our petition, if the Court does not believe that is sufficient, then we are going to accept whatever the Court determines is appropriate.

We believe that that more than satisfies the standard for disqualification here, particularly with respect to the various conflicts that have been identified, not just the ones that have been discussed today, but the ones identified within our submission.

THE COURT: Mr. Reed, is there anything more you want to say?

MR. REED [of Harkins Cunningham]: Very briefly, Your Honor. There is two points that I feel the need to address very quickly on the rape issue.

Mr. Silverberg may want to call the Superior Court's opinion an anomaly, the Supreme Court issued an opinion and I think it has to be given – it has weight, it is controlling on that issue.

Moreover, just one brief excerpt from June McCrory's testimony, and which there is many more on page seven of our brief, but she says, "I told them what happened, and if I'm sleeping and someone starts having sex with me in my opinion, I didn't have the choice, so I was forced. I knew something that I didn't want to happen in a sexual nature, however you want to label it."

She didn't say the word rape. It certainly sounds like involuntary sexual conduct to me, sexual assault, however you want to label it. I honestly don't know why we're debating this issue or what real significance it has to the motion before the Court today. I couldn't let that go without reading that excerpt.

I also can't sit quietly and hear my firm referred to as a RICO enterprise. The last time we were sued and labeled a RICO enterprise Mr. Silverberg was sanctioned.

He has no more basis to say it today than he had to say it then, and that is just not my firm, there are a lot of very good people who are defendants in this case and respectable companies who are being labeled RICO enterprises for no reason at all.

His allegations just continue to expand. His latest paper suggests now that Rohm & Haas is being acquired by Dow in order to build the RICO enterprise. I mean, it's just getting absurd.

But, the mere allegation and I will refer the Court to Judge Rambo's decision in *Dixon*, mere allegations are not enough to disqualify. She says in her opinion, "Plaintiff's allegations against defendants are simply that, allegations. If accusations alone were enough, the parties could too easily interfere with the opposing parties chosen legal representation.

That is exactly what is happening here. Judge Pollak observed in the *Hessling* case that you are more likely to find disqualifying conflicts in a criminal case than you are here. I'm surprised Mr. Silverberg cites a criminal case, *Merlino*.

And, by the way, *Merlino* is an interesting set of facts if you haven't looked at it. There the lawyer visited one of the government's witnesses in jail, delivered a letter on behalf of an alleged crime family, offered to pay him money all in an effort – and to convince him that it would be safe to come to Philadelphia and he wouldn't be killed, all in an effort, it was alleged, to interfere with the government's prosecution. That's not this case, Your Honor, not this case here. Thank you, Your Honor.

THE COURT: The other problem I have, Mr. Silverberg, is I'm not quite sure how your client is benefitting from a multi-forum extended piece

of litigation which started out with initially, as I recall, one claim or perhaps more, but it was focused on one specific incident.

Here we are, as is said, at least five years or three years into the federal scenario, and the tenth year in this process and, you know, short of massive class actions, almost nothing I have seen in my years has extended this long.

I cannot for the life of me understand how you believe this will benefit your client who is the integral person in this process. He is here, he has been the named plaintiff throughout this process, but it's not getting any clearer. There are more motions, more complaints. In the focus group concept, I can't see where this is going for him.

MR. SILVERBERG: We're doing the best we can, Judge. We filed in 2003 –

THE COURT: No, counsel, I have trouble with that because I truly believe that this case doesn't – it has, but it doesn't merit the kind of complexity, the kind of multi-faceted complaints, the kind of motions that have resulted.

There have been sanctions, there have been other motions, there is – multitudinous cases come through, and they don't involve this kind of constant dispute.

These are, I'm sorry, they are large well known respected firms. You are representing Mr. Jackson's interest, but I am not sure at this point where his interests are lost in this complexity of litigation, you know, a hundred and some pages here, and something else there, and then in the meantime, Mr. Jackson as best I can figure out, is lost in the forums.

I am not sure he is the subject of this after a while. I don't [know] whether this is just an exercise in complexity, whether this is some sort of cause, but I have serious concerns as to how this has or will benefit Mr. Jackson. If we are looking at the representation issues, that is some of my concern.

All right. Is there anything else you want to say, Mr. Silverberg?

MR. SILVERBERG: Nothing from the plaintiff.

Transcript of August 6, 2008 Hearing on Pl.'s Motion to Disqualify Counsel for Rohm & Haas Defendants at 22 - 31. Judge Angell's observations, which Jackson attacks as indicative of extreme bias, represent a legitimate area of inquiry for a judge. If it is

thought to be out of bounds for a judge to tell a lawyer that he or she is pursuing an approach that seems to the judge likely to prove unproductive, trial judges — including the undersigned[10] — should be reversed with frequency. A lawyer who is the recipient of such a comment might well derive some gain from considering whether, by any chance, the comment may have merit.

B. In another instance, Jackson quotes a statement by Judge Angell that ends with the sentence "I think this is some elaborate conceptual scheme and it stretches reality to believe that these defendants have any of those intents toward Mr. Jackson."[11] (Aug. 6 Trans. at 35: 14-17). Plaintiff then avers that this statement "is a direct attack on the good faith of plaintiff and plaintiff's counsel and the credibility of the CAC, and undercuts in its entirety the Court's role of fairness and impartiality." Again, it may be helpful to quote the record at length; in the following section, the parties are debating plaintiff's asserted need to depose Pierre Brondeau, COO of defendant Rohm & Haas:

> MR SILVERBERG: But, again, this isn't my offer of proof as to why we are taking Mr. Brondeau's deposition. If [defendants] are going to file a motion for a protective order, I want to know what the basis would be, honest. I mean, all of those guys are implicated, Judge. If you look just from the allegations of the SAC –
>
> THE COURT: I don't know that all those guys are implicated. I remember specifically a time when you told me you hated discovery, you

---

[10] In a hearing not long ago, I had occasion to tell both lawyers, on the record, that they had "dropped the ball."

[11] As stated in note 1 *supra*, Jackson's complaint charges fifty-one defendants with a variety of claims including conspiracies by all defendants to commit various unlawful acts.

basically support the foundation that you are representing and that is not what discovery is all about.

So, I have no assurances that, in fact, you know anything before you request the subpoena to find out what you want to know.

MR. SILVERBERG: Well, if they file a motion we will file an appropriate response, that's all I can say.

MR. REED: Your honor, we will obviously abide by your ruling and we will have to live within the rules.

THE COURT: Right.

MR. REED: I would just like to point out that each time we get a request like this, if we resist it, we're accused of obstruction of justice. If we go down to the deposition, then the person is accused of committing fraud by testifying, and it just gets exponentially broader. There is no better indication of that than this hundred and fifty-two page complaint.

Now, I know Your Honor had said the last time that we met that you were not inclined to stay discovery until these motions could –

THE COURT: Right.

MR. REED:  – be addressed but, frankly, this new complaint is so broad and it names so many people, PriceWaterhouseCoopers is now a RICO enterprise, Hewitt Associates is a RICO enterprise. We could be getting dozens, if he had the resources dozens of depositions a day. I mean –

MR. SILVERBERG: I mean, with all due respect, it's just not fair, Judge.

THE COURT: Well, it is fair.

MR. SILVERBERG: I mean, we're not here to argue the merits of the complaint.

THE COURT: Yes.

MR. SILVERBERG: That is what the dismissal motion is for.

> THE COURT: But, counsel, this is where I too share concerns, because I too am looking at what on its face looked like a fairly reasoned initial complaint about what happened to Mr. Jackson.
>
> Now, we are so far past that into this elaborate combined concept complaint –
>
> MR. SILVERBERG: Yeah, that's fine. Their motion didn't even challenge almost every claim. I mean, all I can do is let them file their motion and respond, which you have in front of you, Judge. So, I don't know why we are doing this today.
>
> THE COURT: Well, we are doing it because I am interested in commenting on it, and I have that prerogative.
>
> MR. SILVERBERG: And I don't mean to not respect that. But, their motion has been filed and we have responded, and I think their motion and our response pretty much for speak itself.
>
> THE COURT: I am continually concerned with the expansiveness. I am concerned with what is like a miasma, oh, what is a fair word, this miasma of your believing that there is an elaborate scheme, collusion, action somehow directed toward you and/or your client.
>
> In my mind, it's [sic] stretches very hard any sense of reality. I can't figure out where you are going, I can't figure out how it's going to benefit Mr. Jackson.
>
> All I see is an exercise and one that has already resulted in sanctions, may have a Rule 11 component to it, and it's occupying the time of judge, untold numbers of defendants and their representation, and you, and it's judicially inefficient, and I think it is prejudicial on behalf of your client, I really cannot see how this process is benefitting your client in any way.
>
> I think this is some elaborate conceptual scheme and it stretches reality to believe that these defendants have any of those intents towards Mr. Jackson.
>
> MR. SILVERBERG: Your honor, unless there is anything further, I would just ask to be excused.

Aug. 6 Trans. at 34 - 37.

Judge Angell's words do constitute a strong challenge to the utility, for the plaintiff, of claims and strategic moves advanced by plaintiff's counsel. Judges, however, are permitted, even expected, to engage in such strong challenges. Such challenges do not, of themselves, betoken bias. They betoken judicial concern for the integrity and effectiveness of the judicial process.

2. *Judge Angell's alleged deviations from the paths marked out in her prior procedural orders*

In reviewing Jackson's contentions in this area, I find no grounds for vacating the reference. Jackson quotes, in full, Judge Angell's order of May 21, 2008 wherein she consolidated Jackson's two civil suits and ordered him to file a consolidated amended complaint. The order also contained Judge Angell's statements that discovery would include bi-weekly phone conferences and that she would take an active role in managing the litigation. Jackson contends that Judge Angell has failed to (1) issue a scheduling order, (2) hold bi-weekly conference calls, and (3) take an active role in advancing the litigation. In various submissions to me — submissions filed after the motion to vacate and severally lodging objections to orders or decisions by Judge Angell — Jackson points to earlier orders by Judge Angell and asserts that the later orders or decisions directly and deliberately contravene the earlier orders.[12] *See, e.g.,* Amend. Obj. (Docket No. 216) at 10

---

[12] Jackson has undertaken to augment his motion to vacate, and to add to his arguments in support of the motion, in an array of subsequent submissions — Docket Nos. 213, 215, 216, 219, and 220 — seeking relief on different issues.
  As I mentioned in note 3 *supra*, Jackson also submitted, with leave of the court, a supplemental memorandum to the motion to vacate that makes further allegations of this kind. I have focused my efforts here on Jackson's original motion to vacate, but have

- 11 (arguing that Judge Angell's decision to stay discovery until after resolution of the motions for injunction and dismissal constituted an improper reconsideration of an earlier order staying discovery until after the motions to dismiss, and the appropriate responses, were filed).

I do not perceive that Judge Angell's management of this lawsuit contravenes her own orders. Nor has Jackson cited to any statute or case that suggests that Judge Angell has abused her discretion or strayed from accepted practices for oversight of discovery and motions practice. The CAC is over 150 pages long and involves over two dozen claims. Since June, Jackson also has, *inter alia*, filed a motion to disqualify counsel and a lengthy motion for preliminary injunction. In short, plaintiff's counsel has undertaken to pursue complex, and ever-ramifying, litigation, and he has made it more complex by actively seeking extraordinary relief in addition to the remedies sought through the complaint itself. I find it altogether expected, and not in the least "extraordinary" under § 636(c)(4), that Judge Angell would need time to make her determinations and that her management strategy for the case might need to evolve and change.

   3. *Alleged "tainted" decisions and intentional advantaging of defendants*

In reviewing these most grievous of charges, I again find no circumstances warranting plaintiff's requested relief. Plaintiff's counsel begins by asserting that Judge Angell "simply ignored the supporting evidence and legal standards" when she denied plaintiff's motion to disqualify counsel for the Rohm & Haas defendants. Pl. Motion at

---

reviewed his other arguments, which add nothing of substance.

17.  Plaintiff's counsel then reargues, at some length, portions of his motion to disqualify. *Id*. at 17-22.  Next, he outlines bias he perceives in Judge Angell's denial of his request for a "status quo" order in late September.  *Id*. at 23.  At the end of his motion to vacate, Jackson weaves an arcane narrative linking the dates of Judge Angell's various scheduling orders to the dates of events in the Rohm & Haas merger with another company that plaintiff sought to block, and then argues that Judge Angell's decisions, and her alleged delaying tactics, have intentionally aided the defendants and foiled Jackson's attempts to stop illegal activities perpetrated by many of the defendants.  *Id*. at 24-29.  This sort of slurring and unattractive innuendo appears in subsequent filings.  *See, e.g.,* Pl. Obj. to Order of Nov. 13, 2008 at 19 ("It must be remembered that Judge Angell did not start disparaging plaintiff's case, reversing her own Orders, disregarding those of Judge Pollak, and literally blocking plaintiff's case until plaintiff connected the Consolidated Amended Complaint with the proposed R&H/Dow merger, and the severe wrongdoing by corporate officers, directors, and members of the Haas Family.").

The more straightforward of these allegations appear to be little more than dissatisfaction with Judge Angell's decisions and her manner of address to plaintiff's counsel.  They offer nothing "extraordinary" under § 636(c)(4) to urge the rarely-granted relief sought by Jackson.  *See Manion*, 251 F. Supp. at 173.  The allegations of deliberate delay, orders designed to frustrate legitimate legal process, and the like — in short, the thinly-veiled charges of serious judicial misconduct — fail to convince me to vacate the

reference because they lack any basis other than plaintiff's aggressive and unfounded verbal assault on a respected judge.

### III.     Conclusion

The record establishes that Judge Angell has devoted significant time to addressing this lawsuit — in particular, to resolving Jackson's many requests for relief. The record further establishes that Judge Angell has addressed the matters before her in a timely and efficient manner. The only aspects of the proceedings before Judge Angell that are "extraordinary" are Jackson's baseless charges that a judicial officer — whose long career on the bench has been marked by wisdom, efficiency, compassion, and, of course, integrity — has engaged in favoritism and obfuscation. Accordingly, there is no basis for vacating the reference pursuant to § 636(c)(4). Further, I decline to vacate the reference *mea sponte* because the record demonstrates not that Judge Angell has failed to conduct the extended and elaborate proceedings capably, but, rather, that the plaintiff, through his counsel, has handled his role in the proceedings in a continuously counterproductive manner. Judge Angell has fulfilled her responsibilities impeccably.

For the reasons stated above, plaintiff's motion will be denied. An appropriate order follows.